868 P.2d 986

**STATE of Arizona, Appellee,**

v.

**James Russell HAMILTON, Appellant.**

**No. 1 CA–CR 92–0176.**

Court of Appeals of Arizona,
Division 1, Department B.

Aug. 26, 1993.

Review Denied Feb. 15, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Linda L. Knowles, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Helene F. Abrams, Deputy Public Defender, Phoenix, for appellant.

## OPINION

JACOBSON, Judge.

Appellant James Russell Hamilton (defendant) raises the following issues on appeal:

(1) as to counts I, II, and IV, for child molestation,

(a) whether those convictions should be vacated because the conduct constituting the offenses charged is no longer a crime, and

(b) whether the sentences imposed constitute cruel and unusual punishment;

(2) whether testimony by the state's expert was properly admitted; and

(3) whether the trial court erred in denying his motion to dismiss counts II through VI of the indictment.

## FACTS AND PROCEDURAL BACKGROUND

█ On appeal from a guilty verdict, we view the facts in the light most favorable to sustaining that verdict. *State v. Zmich*, 160 Ariz. 108, 109, 770 P.2d 776, 777 (1989).

Approximately one week after they met, defendant moved in with his girlfriend, V., and her three children. At that time, V.'s daughters, J. and C., were 12 and 9 years old respectively, and V.'s son was 5. V. worked full time. Defendant did not work steadily and began taking control of the house and children. Soon thereafter, defendant began demanding sexual favors from V.'s daughters in exchange for his permission to do something the girls wanted to do.

Over the years, defendant threatened the girls to keep them silent about the molestations. On one occasion, defendant threatened to slit J.'s throat if she told her natural father what had been going on. On another occasion, defendant hit J. in the face, giving her a black eye, after J. told him she was going to tell that he had been molesting them. C. finally reported the abuse to a church counselor, who notified Child Protective Services.

Defendant was indicted on June 3, 1991 on three counts of child molestation, class 2 felonies and dangerous crimes against children in the first degree (counts I, II, and IV), and three counts of sexual conduct with a minor, also class 2 felonies and dangerous crimes against children in the first degree (counts III, V, and VI). Defendant subsequently moved to dismiss counts II–VI, arguing that those counts were duplicitous and vague; the trial court denied the motion.

Defendant's trial commenced on December 11 and concluded on December 18, 1991. The jury found defendant guilty as charged on counts I, II, IV, V, and VI, and not guilty on count III.

On January 24, 1992, after weighing the aggravating and mitigating factors, *see* A.R.S. § 13–702(C), the trial court sentenced defendant to aggravated terms of 20 years on counts I, II, and IV, and 25 years on count V

and VI. Defendant was given 286 days of presentence incarceration credit on count I. The court ordered the sentences imposed to run consecutively, and further ordered defendant to pay $500 in felony assessments and an $8 time payment fee.[1] Defendant timely appealed.

## DISCUSSION

### Counts I, II, and IV

Although put forth by defendant as one argument, defendant actually raises two arguments with regard to the child molestation counts. We address each in turn.

#### A. Judgment of Conviction

█ Counts I and II alleged that defendant had committed the crimes of child molestation against J. between October 1, 1986 and May 31, 1987; count IV alleged that defendant had committed the crime of child molestation against C. between June 15, 1990 and July 15, 1990. At the times the offenses were alleged to have occurred, both J. and C. were more than 14 but not yet 15 years old. These three counts were charged under A.R.S. § 13–1410 which, prior to September 1990, provided:

> A person who knowingly molests a child *under the age of fifteen years* by directly or indirectly touching the private parts of such child or who causes a child *under the age of fifteen years* to directly or indirectly touch the private parts of such person is guilty of a class 2 felony and is punishable pursuant to § 13–604.01.

(Emphasis added.) In September 1990, the legislature amended § 13–1410 to read "under the age of *fourteen* years." Laws 1990, ch. 384, § 4 (emphasis added). Defendant was indicted in June 1991, after the effective date of the amendment.

Defendant argues that his sentences on count I, II, and IV constitute cruel and unusual punishment because the conduct constituting the offenses charged in those counts—molestation of a child older than 14 years of age—was "no longer criminal" at the time of these proceedings. However, rather than at-

---

1. *But see* discussion, *infra*.

tacking the sentences imposed on these counts, defendant more precisely attacks the judgments of conviction themselves, contending that he should not have been convicted at all based on conduct that was not legislatively proscribed at the time the indictment was issued. In this regard, defendant contends that the judgments of conviction on counts I, II, and IV must be vacated.

■ In Arizona, statutes do not apply retroactively unless they specifically so provide. A.R.S. § 1–244. In the context of criminal law, an offender must be punished under the law in force when the offense was committed and is not exempted from punishment by a subsequent amendment to the applicable statutory provision. A.R.S. §§ 1–246 and –247. *See also* A.R.S. § 1–105 (effect of repeal by revised statutes on prior offenses and punishment). Another department of this court has recently held that these general savings statutes apply here because the 1990 amendment to § 13–1410 changed the penalty for the molestation of a 14–year old, but did not decriminalize the conduct. *State v. Serna,* 175 Ariz. 332, 857 P.2d 384 (App. 1993). We agree that these general savings statutes apply in this case even though, in our opinion, the amendment "decriminalized" the conduct of molestation of a 14–year old child.

The 1990 amendment to § 13–1410 changed more than the classification of the felony or the statutory range of sentences. That amendment changed an *element* of the crime of child molestation by decreasing the requisite age of the victim from under 15 to under 14 years. One who today directly or indirectly touches the private parts of a 14–year old, or who causes that child to directly or indirectly touch such person's private parts, quite simply has not committed the crime of child molestation under § 13–1410. That that conduct today may constitute some other crime, such as sexual abuse,[2] does not alter the fact that it no longer meets the *elements* of the crime of child molestation. Thus, in our opinion, the legislative amendment to § 13–1410 did more than change the penalty for the conduct alleged here: it "de-

criminalized" that conduct insofar as § 13–1410 is concerned.

■ Nevertheless, despite our disagreement with the *Serna* court on this point, we see no reason why A.R.S. §§ 1–246 and –247 should not be applied in this case. A legislative amendment that is substantive in nature, as this one undoubtedly is, will not be applied retroactively absent a legislative direction to the contrary. *Cf. State v. Winton,* 153 Ariz. 302, 305, 736 P.2d 386, 389 (App.1987). Absent that legislative direction, even an outright "decriminalization" of conduct will not open the prison doors to those defendants convicted for conduct that was legislated "criminal" when it occurred. *See Midkiff v. State,* 43 Ariz. 323, 326, 30 P.2d 1057, 1058 (1934) (defendant could be punished for pretending to be an attorney under the law in effect at the time of the alleged offense, even though that law was repealed before sentence was imposed). Such a legislative direction of retroactivity is conspicuously absent with regard to the 1990 amendment to § 13–1410.

Defendant makes much of the fact that the amendment here became effective before he was even indicted. We acknowledge that this makes defendant's argument more facially persuasive than if it had become effective, for example, just prior to sentencing. However, that defendant was indicted after the amendment lowered the operative age from 15 to 14 years does not change the fact that, at the time defendant committed the acts alleged in counts I, II, and IV, it was a class 2 felony to commit those acts against a child under the age of 15. We find no error on this basis.

B. Sentence of Imprisonment: *Bartlett* Analysis

■ Defendant next attacks the length of his sentences as constituting cruel and unusual punishment based primarily on an analysis set forth in *State v. Bartlett,* 171 Ariz. 302, 830 P.2d 823, *cert. denied,* —— U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992) (*Bartlett II* ). *See* U.S. Const. amend. VIII; Ariz. Const. art. 2, § 15.

---

2. *See* A.R.S. § 13–1404; *Serna,* 175 Ariz. at 335, 857 P.2d at 387.

In *State v. Bartlett*, 164 Ariz. 229, 792 P.2d 692 (1990) (*Bartlett I* ), the Arizona Supreme Court held that Bartlett's sentences totalling 40 years for two counts of sexual conduct with a minor constituted cruel and unusual punishment. In so doing, the court applied the three-prong test of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), specifically analyzing (1) the gravity of the offense and the harshness of the penalty, (2) a comparison of other sentences imposed in the same jurisdiction for more serious crimes, and (3) a comparison of sentences in other jurisdictions for the same crime. *Bartlett I*, 164 Ariz. at 233–34, 792 P.2d at 696–97; *Solem*, 463 U.S. at 292, 103 S.Ct. at 3010.

*Bartlett I* was vacated and remanded by the United States Supreme Court with directions to reconsider in light of that Court's holding in *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). *Arizona v. Bartlett*, —— U.S. ——, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991). Upon remand, our supreme court applied Justice Kennedy's concurring opinion in *Harmelin* to analyze the issue of eighth amendment proportionality review. *Bartlett II*, 171 Ariz. at 305, 830 P.2d at 826. Justice Kennedy opined that the three-prong *Solem* test was still the law, but that an analysis under the second and third prongs was "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." 501 U.S. at ——, 111 S.Ct. at 2707; *Bartlett II*, 171 Ariz. at 304, 830 P.2d at 825. Accordingly, under Justice Kennedy's analysis the threshold test was whether *Solem* 's first prong was violated—i.e., whether the sentence was grossly disproportionate to the gravity of the offense. *Bartlett II*, 171 Ariz. at 306, 830 P.2d at 827.

On remand in *Bartlett II*, our supreme court again determined that Bartlett's sentences were grossly out of proportion to the severity of the crimes, thus violating *Solem* 's first prong. *Id.* at 307, 830 P.2d at 828. In so doing, the court based its conclusion on several factors. Defendant contends that application of these factors to his case compels the conclusion that his sentences on counts I,

II, and IV were also grossly disproportionate. We disagree.

### 1. Circumstances of the Crime

The first factor considered in *Bartlett II* was the circumstances of the crime, specifically, the presence or absence of violence or the threat of violence. *Id.* In that case, the Arizona Supreme Court found that the 14-year old victims were willing participants, and that defendant used no violent force or threats against them. *Id.* Further, neither sustained any physical injuries nor testified to any emotional trauma. *Id.* These circumstances, the supreme court believed, minimized the severity of Bartlett's crimes. *Id.*

Apart from the fact that the victims in both *Bartlett* and this case were 14 years old, we find absolutely nothing similar about the circumstances of these cases. Far from being willing participants, the victims in this case suffered long-term, systematic abuse by one in a position of power over them who used that power both to molest the victims and to obtain their silence. That defendant may not have needed to resort to violence or the threat thereof in order to molest these victims does not minimize the severity of his crimes. Defendant had a far more effective weapon at his disposal: quasi-parental authority. Moreover, there was evidence that both victims suffered long-lasting emotional trauma as a result of the molestations. Suffice it to say, we find nothing surrounding the circumstances of the crimes charged in counts I, II, and IV to warrant a conclusion of disproportionality. *See State v. Zimmer*, 140 Ariz.Adv.Rep. 14 (App. May 28, 1993).

### 2. Personal Culpability

Bartlett was young and immature, with no prior felony record, and did not intend to harm the victims either physically or emotionally. *Bartlett II*, 171 Ariz. at 307, 830 P.2d at 828. Conversely, defendant here was 30 years old when he moved in with the victims' mother; he was neither immature nor emotionally insecure. His systematic manipulation of the victims so as to satisfy his sexual desires clearly permits the inference of an intent to harm. Further, although defendant may technically lack a prior rec-

ord, he was also convicted and sentenced on counts V and VI for sexual conduct with a minor, sentences which he does not contend were cruel or unusual; defendant's implied claim of criminal purity is hardly credible.

### 3. Harm to Society

In analyzing the harm to society caused by Bartlett's conduct, the supreme court in *Bartlett II* acknowledged the "realities of adolescent life," and noted that "sexual conduct among post-pubescent teenagers is not uncommon." 171 Ariz. at 308, 830 P.2d at 829. Defendant here urges us to consider that "the realities of adolescent life continue to be a factor."

As noted, this case is a far cry from *Bartlett*. We do not have here a consensual, romantic relationship between a post-pubescent teen and an immature young man. Rather, this is a case of a coercive, psychologically brutalizing relationship between an adult man in a position of trust and authority over children of his girlfriend. To contend that such a relationship is a "reality of adolescent life" is a travesty on normal behavior.

### 4. Evolution of the Law and Present Sentencing Standards

Finally, the supreme court in *Bartlett II* noted the modern legal trend to separate the crime of statutory rape from other violent sex crimes and to reduce the severity of the sentences accordingly. *Id.* at 308–10, 830 P.2d at 829–31. Defendant also points out the legislature's amendment of § 13–1410 to lower the requisite age of the victim from 15 to 14 years as indicative of gross disproportionality. *See discussion, supra.* We acknowledge that, if defendant had committed the acts alleged in counts I, II, and IV today against 14–year old victims, his conduct would not be punishable under § 13–1410. However, we agree with the state that a mere subsequent change in the law, without more, will not convert a sentence within the statutory limits into one that is disproportionate.

### 5. Conclusion

As explained by Justice Kennedy in *Harmelin*, and as adopted by our supreme

court in *Bartlett II*, examination under the second and third *Solem* prongs is no longer required in a cruel and unusual analysis unless *Solem*'s first prong establishes an inference of disproportionate punishment. In this case, we find that defendant's sentences of 20 consecutive years on counts I, II, and IV for child molestation are not grossly disproportionate to the gravity of the offenses charged. Thus, we need not reach the intra- and inter-jurisdictional comparisons of prongs two and three. *See Bartlett II,* 171 Ariz. at 310, 830 P.2d at 831 (conducting intra- and inter-jurisdictional comparisons because threshold inference of gross disproportionality reached). We hold instead that defendant's sentences on counts I, II, and IV do not constitute cruel and unusual punishment in violation of either the state or federal constitutions.

### *Testimony by State's Expert*

Dr. Tascha Boychuk, director of the Child Abuse Prevention Center at St. Joseph's Hospital in Phoenix, was called by the state to testify regarding the general characteristics of child molesters and their victims, or "child abuse accommodation syndrome" as it is known. Defendant argues on appeal that Dr. Boychuk's testimony was inadmissible expert testimony. The state argues that defendant failed to specifically object to this evidence at trial, consequently failing to preserve this issue for appeal.

A party must make a specific and timely objection at trial to the admission of certain evidence in order to preserve that issue for appeal. *E.g., State v. Cook,* 170 Ariz. 40, 58, 821 P.2d 731, 749 (1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 137, 121 L.Ed.2d 90 (1992). *See generally* Rule 103(a), Arizona Rules of Evidence. A general objection, such as "irrelevance," will not be sufficient to preserve the issue for appeal. *Grant v. Arizona Public Serv. Co.,* 133 Ariz. 434, 450, 652 P.2d 507, 523 (1982). Further, an objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds. *E.g., State v. Lopez,* 170 Ariz. 112, 118, 822 P.2d 465, 471 (App.1991) (objections to insufficient foundation and form of the

question failed to preserve on appeal issue that testimony was beyond scope of permissible expert testimony); *State v. Hernandez,* 170 Ariz. 301, 306–07, 823 P.2d 1309, 1314–15 (App.1991) (hearsay objection did not preserve issue that testimony violated confrontation clause).

Defendant filed no pretrial motions to preclude Dr. Boychuk's testimony.[3] At trial, defendant objected at several points in Dr. Boychuk's testimony on grounds of hearsay, improper foundation, and relevancy. However, on appeal defendant argues (1) that Dr. Boychuk was not a qualified expert, (2) that child abuse accommodation syndrome is not a proper subject for expert testimony, and (3) that the probative value of the testimony was outweighed by its prejudicial effects. *See generally State v. Chapple,* 135 Ariz. 281, 291, 660 P.2d 1208, 1218 (1983); *State v. Moran,* 151 Ariz. 378, 380–81, 728 P.2d 248, 250–51 (1986) (setting forth requirements for admissibility of expert testimony). We agree with the state that defendant's general objections failed to preserve those issues now raised by him on appeal.

■ Given defendant's waiver of this issue, our review is limited to one of fundamental error. *State v. Gendron,* 168 Ariz. 153, 812 P.2d 626 (1991) (defining fundamental error). Because we find that admission of Dr. Boychuk's testimony was not error in the first place, we concomitantly find that it was not fundamental error.

■ An expert can be a lay person with special knowledge superior to the general population gained through actual experience or careful study. *State v. Bauer,* 146 Ariz. 134, 137, 704 P.2d 264, 267 (App.1985). Dr. Boychuk testified as to her extensive experience, both through study and in practice, with child molestation victims. We believe Dr. Boychuk clearly qualified as an "expert" as that term is contemplated by the Arizona Rules of Evidence.

■ Next, Dr. Boychuk's testimony regarding the general behavioral characteris-

tics of child molesters and their victims is virtually the identical type of testimony that is consistently upheld by both this court and the supreme court as being helpful to jurors and, thus, a proper subject for expert testimony. *E.g., State v. Moran, supra; State v. Lindsey,* 149 Ariz. 472, 720 P.2d 73 (1986); *State v. Lopez, supra; State v. Jackson,* 170 Ariz. 89, 92, 821 P.2d 1374, 1377 (App.1991). And, finally, that the expert testimony about the behavioral characteristics of child molestation victims is persuasive does not mean that it is "unfairly" prejudicial. *State v. Moran,* 151 Ariz. at 384, 728 P.2d at 254. We see nothing about the generalized nature of Dr. Boychuk's testimony that makes it "unfairly" prejudicial in defendant's case.

■ Defendant also argues that Dr. Boychuk's discussion of a scientific article by Dr. Roland Summit was hearsay and therefore violated his right to cross-examine and confront witnesses. *See* U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. At trial, defendant specifically objected to Dr. Boychuk's oral discussion of this article; the trial court ruled it admissible under Rule 703, Arizona Rules of Evidence, but requested that the state lay a further foundation on this basis. Dr. Boychuk then testified that Dr. Summit's 1983 article regarding child abuse accommodation syndrome was generally accepted in her professional field. Defendant made no further objections to Dr. Boychuk's testimony along these lines.

Assuming without deciding that defendant preserved this issue for appeal without objecting again after the state laid the foundation under Rule 703 for Dr. Boychuk's oral discussion of the article, we find no error. The United States Supreme Court has consistently held that the confrontation clause is satisfied when the proffered evidence has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule. *White v. Illinois,* —— U.S. ——, ——, 112 S.Ct. 736, 743, 116 L.Ed.2d 848 (1992); *Idaho v. Wright,* 497 U.S. 805, 814, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990).

---

3. Defendant contends that a pretrial hearing was necessary in order to determine the admissibility of Dr. Boychuk's testimony under Rule 703, Arizona Rules of Evidence. However, defendant

never requested a pretrial hearing on this issue, and fails to cite us to any authority that holds it reversible error for the trial court to fail to *sua sponte* hold one.

In this case, the proffered evidence—Dr. Summit's article—falls squarely within the "learned treatise" exception to the hearsay rule. Rule 803(18), Arizona Rules of Evidence; *Reeves v. Markle*, 119 Ariz. 159, 162, 579 P.2d 1382, 1385 (1978). Consequently, defendant's rights of confrontation were not violated by Dr. Boychuk's discussion of the standards set forth in Dr. Summit's article on child abuse accommodation syndrome.[4]

*Duplicitous Indictment*

Defendant next argues that the trial court erred in denying his motion to dismiss counts II through VI of the indictment.[5]

An indictment is duplicitous if it charges separate crimes in the same count. *State v. Whitney*, 159 Ariz. 476, 480, 768 P.2d 638, 642 (1989). Duplicitous indictments are prohibited because they fail to give adequate notice of the charge, present a hazard of a non-unanimous jury verdict, and make a precise pleading of double jeopardy impossible in the event of a later prosecution. *Id.* However, in order to prevail on an arguably duplicitous indictment, defendant must demonstrate that he was actually prejudiced thereby. *State v. Schroeder*, 167 Ariz. 47, 52, 804 P.2d 776, 781 (App.1990).

In *Spencer v. Coconino County Superior Court*, 136 Ariz. 608, 667 P.2d 1323 (1983), the defendant was charged with one count of incest and one count of child molestation, but the facts giving rise to these charges involved over 100 separate incidents occurring over 13 months. Thus, the supreme court held that the indictment was duplicitous. *Id.* at 610, 667 P.2d at 1325. Here, however, the challenged counts charged defendant with the commission of one specific act against one specific victim within a specific time period. The victims testified as to the specific occurrence that formed the basis for each specific count, and the state clearly delineated during closing arguments what specific conduct constituted the offense charged in each specific count. Although the indictment does allege time periods in which the offenses were alleged to have occurred ranging up to one year, defendant does not show any *actual* prejudice therefrom.[6] Accordingly, we find no error in the trial court's denial of defendant's motion to dismiss.

CONCLUSION

We affirm the judgments of convictions and the sentences imposed. However, the sentencing minute entry erroneously orders imposition of two $8 time payment fees. Pursuant to A.R.S. § 13–4037, we modify the sentencing minute entry to reflect imposition under A.R.S. § 12–116 of one $8 time payment fee. *See State v. Rivera*, 172 Ariz. 247, 250, 836 P.2d 460, 463 (App.1992).

GERBER, P.J., and TOCI, J., concur.

---

**4.** Without any citation to authority, defendant argues in his reply brief that an expert's discussion of a "learned treatise" is only admissible under Rule 803(18) if that expert was involved in the underlying research conducted by the author of the treatise. We flatly reject this argument.

**5.** Defendant was acquitted of count III.

**6.** Defendant's assertion that he was unable to present an alibi defense, because he could not reconstruct his life for a specific year, is a theoretical, not an actual, prejudice that could be asserted any time an offense was alleged to have occurred over a period of time.