*930 P.2d 551*

STATE of Arizona, Appellee,

v.

Daryl Gilman SCOTT, Appellant.

No. 1 CA–CR 95–0642.

Court of Appeals of Arizona,
Division 1, Department E.

Dec. 24, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Gail Gianasi Natale, Phoenix, for Appellant.

## OPINION

WEISBERG, Judge.

Daryl Gilman Scott (defendant) appeals his convictions and sentences for robbery, a class four nondangerous felony, and possession of marijuana, a class six nondangerous felony. We affirm.

## FACTUAL AND PROCEDURAL HISTORY [1]

On August 10, 1994, defendant and Michael Wilson entered a local Circle K store. They walked to the back of the store, picked up two 18–packs of beer, and left the store without paying. Jaimie Rapp, the clerk at the Circle K, came from behind the counter with a big stick or baseball bat and followed defendant and Wilson. He yelled to them that they needed to pay for the beer or he would call the police. Defendant and Wilson turned around and Wilson pointed a gun at Rapp and told him to get back in the store. Rapp also saw that defendant held a "glinty" object that was about six inches in length.

Rapp went back into the store and called the police.

Lisa Stratton, a customer at the Circle K, saw Wilson point the gun at Rapp. Kizzy Williams, who was using the outside telephone, saw defendant and Wilson enter the store and leave with the beer. Although she could not hear the words that were exchanged, she saw the confrontation between Rapp and defendant and Wilson. She testified that Wilson had a gun and that defendant had an ice pick.

Mesa Police Officer Scott Purington received a call that a police air-unit had spotted a car matching the description of the one driven by the armed robbery suspects from the Circle K. Officer Purington found the car parked at another convenience store and pulled in behind it so that the suspects could not back out. Defendant got out of the car and tried to run from the officer. After he was apprehended, defendant gave Officer Purington a fictitious name, but later admitted his true name. Defendant was arrested and searched. Officer Purington found a small baggie containing a "green leafy substance" in defendant's front pants pocket. Upon searching the car, Officer Purington found two 18–packs of beer and two kitchen knives. One of the knives measured approximately six inches in length. Defendant was subsequently transported to the Mesa Police Station for questioning.

At the police station, Officer Ian Jarvis advised defendant of his *Miranda*[2] rights and questioned him. Defendant told Officer Jarvis that he was "an innocent bystander." A short while later, defendant admitted to Detective Ronald Schoch that he and a few other people had gone to the Circle K to buy beer and that "plans changed, and . . . he ended up taking the beer without paying for it." Defendant denied that he had a knife or that Wilson had a gun, but admitted that he had seen a knife on the floor of the car.

Defendant was indicted for armed robbery and possession of marijuana. Following a

---

1. We view the facts and evidence in the light most favorable to sustaining the verdict. *State v. Atwood,* 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied,* 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

2. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

jury trial, defendant was convicted of robbery, a lesser included offense of armed robbery, and possession of marijuana. He admitted a prior felony conviction to the trial court. The trial court entered judgment and sentenced defendant to an aggravated term of six years with the Department of Corrections for the robbery and to a concurrent term of 1.75 years for the marijuana possession. Defendant was also fined $750 and ordered to pay restitution of $19.98.

Defendant timely appeals and asserts that:

1. The trial court committed fundamental error in failing to require that the bench conferences be made part of the record.

2. The trial court abused its discretion in allowing Robert Bates to testify as an expert.

3. The trial court erred in denying defendant's motion for a directed verdict on the charge of marijuana possession.

4. This court should search the trial record for any additional issues "that might arguably support the appeal."

## DISCUSSION

### 1. Unrecorded Bench Conferences

■ Defendant directs our attention to several off-the-record bench conferences that took place during trial. It appears from the transcripts that conference discussions were reconstructed on the record when the parties or the trial court deemed it important to do so. Because defendant did not object to this practice at trial, he has waived all but fundamental error arising therefrom. *See State v. Hamilton,* 177 Ariz. 403, 409, 868 P.2d 986, 992 (App.1993). Fundamental error is that which reaches the foundation of the case, takes from defendant a right essential to his defense, or is of such dimension that defendant has been denied a fair trial. *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

■ Defendant argues that the failure to record bench conferences constitutes fundamental error because it impinges his right to appeal by depriving him of a complete trial record. *See* Ariz. Const. art II, § 24. Defendant has not alleged any particular preju-

dice from the failure to record the bench conferences but argues, without authority, that "[p]rejudice must be assumed." We disagree.

■ So long as the record is of "sufficient completeness for adequate consideration of the errors assigned," then it is "satisfactory to afford defendant a meaningful right of appeal." *State v. Schackart,* 175 Ariz. 494, 499, 858 P.2d 639, 644 (1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 220 (1994). Even if a trial record is incomplete, we must assume that it supports the judgment unless there is "*at least* a credible and unmet allegation of reversible error." *Id.* (quoting *State v. Masters,* 108 Ariz. 189, 192, 494 P.2d 1319, 1322 (1972) (emphasis added)). There is no such allegation in this case.

Furthermore, this court expressly held, in *State v. Paxton,* 186 Ariz. 580, 925 P.2d 721 (App.1996), that although we disapprove of the practice, absent a timely objection or some demonstrable prejudice, the failure to make a contemporaneous record of a bench conference does not constitute fundamental error. Defendant has presented no compelling argument for us to depart from the reasoning of *Paxton* and we decline to do so.

### 2. Qualification of the State's Criminalist

Robert Bates, a criminalist for the City of Mesa, testified for the state that the "green leafy substance" found in defendant's pants pocket was marijuana. Defendant argues that the trial court abused its discretion in allowing Bates to testify regarding the marijuana because he was not qualified as an expert on the subject. Defendant did not object to Bates' qualifications at trial, however, and consequently has again waived all but fundamental error. *Hamilton,* 177 Ariz. at 409, 868 P.2d at 992.

■ One qualifies as an expert on a particular topic if he or she has "special knowledge superior to the general population gained through actual experience or careful study." *Id.* Bates testified that he had been a criminalist for 14 years and that his duties have included examining physical evidence and re-

lating his findings in court. He received his training from the Federal Bureau of Investigations, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, and Firearms, and the various companies that manufacture the testing equipment that he uses. Bates testified that he was a member of several professional organizations for forensic scientists, and has analyzed and identified marijuana on more than 1,000 occasions. We find no error in the admission of Bates' testimony as expert opinion on the subject of marijuana identification.

### 3. Sufficiency of the Evidence for Marijuana Possession

After the state presented its case, defendant moved for a directed verdict of acquittal on the charge of marijuana possession. He argued that, although Bates testified that the substance found in defendant's pocket was "marijuana," Bates defined marijuana only as "a green plant," and did not give any testimony that would satisfy the statutory definition set forth in A.R.S. section 13–3401(16). Defendant renews his argument here and asserts that insufficient evidence was presented from which the jury could conclude that the substance he possessed was marijuana. We disagree.

■ We will not reverse defendant's conviction for insufficiency of the evidence unless there is no substantial evidence to support the jury's verdict. *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983). "If reasonable [persons] may fairly differ as to whether certain evidence establishes a fact in issue, then the evidence must be considered as substantial." *State v. Tison*, 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

A.R.S. section 13–3401(16) provides:

"Marijuana" means all parts of any plant of the genus cannabis, from which the resin has not been extracted, whether growing or not, and the seeds of such plant. Marijuana does not include the mature stalks of such plant or the sterilized seed

of such plant which is incapable of germination.

Officer Purington testified that defendant possessed "a green leafy substance." Bates, a qualified expert in marijuana identification, testified that marijuana was a "green plant" and that, based upon his visual examination and microscopic and chemical color tests, the substance found on defendant was marijuana.[3] Neither Purington nor Bates testified to the presence of any stalks or seeds, which the jury could verify by its own examination. We hold that from such evidence the jury could reasonably conclude that the subject substance was marijuana.

### 4. *Anders* Issues

Defendant's counsel has submitted a brief on the merits of this appeal consisting of the three issues discussed above. Additionally, citing *State v. Leon*, 104 Ariz. 297, 299, 451 P.2d 878, 880 (1969), she has asked that we "search the record for additional issues 'that might arguably support the appeal[.]'" Counsel then "suggests" that we consider three additional issues: the trial court's failure to direct a verdict on the charge of armed robbery, the insufficiency of the evidence to convict defendant under an accomplice liability theory, and the trial court's changes to the standard order of trial proceedings.

■ When counsel has filed an advocate's brief on behalf of a defendant, it is neither the role nor the duty of this court to search the record for appealable issues; that is the responsibility of defendant's attorney. Appellate counsel's obligation is to

master the trial record, thoroughly research the law, and exercise judgment in identifying the arguments that may be advanced on appeal. In preparing and evaluating the case, and in advising the client as to the prospects for success, counsel must consistently serve the client's interest to the best of his or her ability.

*McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 438, 108 S.Ct. 1895, 1902, 100

---

**3.** Defendant has not cited, nor have we found, any authority holding that expert testimony regarding the *specific* physical or chemical makeup

of marijuana is necessary to sustain a conviction for a related offense.

L.Ed.2d 440 (1988). If, after such review, counsel finds appealable issues which support any "arguably meritorious grounds for reversal of [the defendant's] conviction or modification of his [or her] sentence," then those issues must be raised in an advocate's brief. *Penson v. Ohio*, 488 U.S. 75, 81, 109 S.Ct. 346, 350, 102 L.Ed.2d 300 (1988).

*Leon* is inapplicable when an advocate's brief has been filed. In *Leon*, the Arizona Supreme Court discussed the requirements for filing what is commonly known as an *Anders* brief. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). An *Anders* brief is filed only after counsel concludes that a defendant's appeal is "wholly frivolous," *id.* at 744, 87 S.Ct. at 1400, or "lacks any basis in law or fact," *McCoy*, 486 U.S. at 438 n. 10, 108 S.Ct. at 1902 n. 10. In such brief, counsel advises this court of that conclusion and sets forth any "arguable issues" that appear in the trial record. *Id.* at 439, 108 S.Ct. at 1902. The primary purpose of this procedure is to ensure that defense counsel has conducted a thorough review of the record and has researched all of the arguable issues. *Id.* Secondarily, it helps the appellate court determine whether the appeal is indeed frivolous.[4] *Penson*, 488 U.S. at 81–82, 109 S.Ct. at 350–51; *McCoy*, 486 U.S. at 439, 108 S.Ct. at 1902.

In an *Anders* appeal, the role of this court is not to decide the merits of any issues presented, but to ensure that the defendant has received constitutionally adequate representation on appeal. *See McCoy*, 486 U.S. at 442, 108 S.Ct. at 1903–04. To fulfill this role, we are required to conduct "an exhaustive search of the [trial] record." *Leon*, 104 Ariz. at 300, 451 P.2d at 881; *see also Penson*, 488 U.S. at 80, 109 S.Ct. at 349–50 (citing *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400).

There is, however, no *Anders*-hybrid type of brief. When an advocate's brief has been filed on behalf of a defendant, we *presume* that counsel has raised all arguably meritorious issues and therefore will not "search the record" as defendant has requested.[5] Because counsel here has filed a brief on the merits, we will not address any of the "arguable" issues that she suggests to us under *Leon*.

## CONCLUSION

Defendant's convictions and sentences are affirmed. We have not reviewed the record for fundamental error. *See State v. Smith*, 184 Ariz. 456, 460, 910 P.2d 1, 5 (1996).

GARBARINO, P.J., and TOCI, J., concur.

**4.** When filing an *Anders* brief in Maricopa County, rather than articulate "arguable issues," counsel typically present a detailed statement of facts and procedure with appropriate references to the trial record. These statements serve the same purposes as identifying arguable issues by demonstrating that counsel has thoroughly reviewed the record, and by aiding this court in our own review.

**5.** The former A.R.S. section 13–4035 required this court to search for fundamental error in all criminal appeals. The state argues that since the statute was repealed, *see* 1995 Ariz.Sess. Laws ch. 198, § 1, we no longer have the authority to reverse a non-*Anders* type case for fundamental error that was not raised by the defendant. This argument has been previously rejected by this court. *State v. Taylor*, 187 Ariz. 567, 571, 931 P.2d 1077, 1081 (App.1996); *see also State v. Curry*, 187 Ariz. 623, 626–627, 931 P.2d 1133, 1136–1137 (App.1996). Although we no longer have the *obligation* to search for fundamental error in an appeal on the merits, we certainly have the *authority* to address it when we see it. *Taylor*, 187 Ariz. at 571, 931 P.2d at 1081; *Curry*, 187 Ariz. at 626–627, 931 P.2d at 1136–1137.