NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DEBRA ELIZABETH STEPHENS, *Appellant.*

No. 1 CA-CR 15-0200
FILED 5-31-2016

Appeal from the Superior Court in La Paz County
No. S1500CR201400129
The Honorable Samuel E. Vederman, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

David Goldberg Attorney at Law, Fort Collins, CO
By David Goldberg
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Judge Peter B. Swann and Judge Jon W. Thompson joined.

---

O R O Z C O, Judge:

¶1        Debra Elizabeth Stephens appeals her convictions and sentences for possession of dangerous drugs for sale and possession of drug paraphernalia. Stephens argues the trial court erred when it: (1) failed to find the search was unconstitutional; (2) admitted evidence that Stephens invoked her constitutional rights prior to the search; and (3) admitted "profile evidence" that compared Stephens to other drug dealers. For the reasons that follow, we affirm Stephens' convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶2        "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene*, 192 Ariz. 431, 436, ¶ 12 (1998) (citation omitted). We do not reweigh the evidence. *State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶3        A La Paz County sheriff's deputy went to a local swap meet to check on the welfare of a child. The deputy believed the child's mother drove a silver van. As he walked towards a silver van parked near the swap meet, the deputy saw three people inside. Stephens was in the driver's seat and held a black purse or bag. When Stephens saw the deputy, she shoved the bag down between her seat and the driver's side door.

¶4        The deputy approached Stephens and asked if she knew the whereabouts of the child's mother. When they finished their discussion, the deputy asked Stephens if she had any drugs in the vehicle and Stephens replied she did not. He then asked Stephens if he could search the bag she had just shoved down by the door. Stephens declined to give consent to search the bag. Stephens' demeanor also changed from what the deputy described as very pleasant and cooperative to aggressive and hostile. Stephens told the deputy she was offended, he was harassing her and that he had no basis to ask to search her bag. The deputy told Stephens he did not mean to offend her and explained what he believed his duties and responsibilities were in such a situation, what led him to believe there might

be "something going on with the bag" and why he asked for her consent to look in the bag. Stephens calmed down until the deputy asked her directly what was in the bag. Stephens became upset again, grabbed the bag, opened it, held it up to the deputy and told him to look inside. Among other objects, the deputy saw a prescription pill bottle that had no label but contained what appeared to be a wrapped object. Stephens then closed the bag.

¶5          The deputy asked Stephens what was in the bottle and Stephens claimed it was empty. She further claimed she normally used the bottle to carry nuts and bolts. When the deputy told Stephens he could see something in the bottle, she again claimed it was empty. Given that Stephens twice claimed the bottle was empty when the deputy could plainly see something wrapped inside it, the deputy believed it necessary to investigate the bottle further. The deputy again asked to see the bottle. Stephens took the bottle from the purse and began to reach to the other side of the van in an effort to keep the bottle from the deputy. The deputy told Stephens to let him see the bottle but she refused. The deputy opened the door to the van, grabbed Stephens' arm with one hand, grabbed the bottle with the other and pulled Stephens out of the van. As he did so, the deputy could see the bottle contained plastic baggies with a crystalline substance.

¶6          The deputy handcuffed Stephens and opened the bottle. The deputy noted the substance in the baggies within the bottle appeared to be methamphetamine. The deputy then searched Stephens' bag and found a glass pipe of a type commonly associated with methamphetamine use, more plastic baggies, some of which had white residue in them, two digital scales with white residue on them and other items associated with methamphetamine use and sale. The deputy also found pills.

¶7          Stephens admitted the pipe was for smoking methamphetamine, but claimed it was an old one she had forgotten. She also claimed the substance in the bottle was a mineral she used to polish gems. The deputy arrested Stephens for possession of what appeared to be methamphetamine, a pipe used to smoke methamphetamine and prescription pills for which she had no prescription. The deputy also arrested Stephens because she appeared to be engaged in the sale of drugs. Testing later confirmed the substances in the pill bottle were methamphetamine and oxycodone.

¶8          By the time of trial, only five of the eight counts the State originally charged remained. The trial court later granted Stephens' motion for judgment of acquittal on two counts of possession of drug

paraphernalia. The jury acquitted Stephens of one count of possession of a narcotic drug. The jury found Stephens guilty of possession of drug paraphernalia and possession of a dangerous drug for sale. The trial court sentenced Stephens to ten years' imprisonment for possession of dangerous drugs for sale and a concurrent term of one year imprisonment for possession of drug paraphernalia. Stephens timely appealed and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A, 13-4031 and -4033 (West 2016).[1]

## DISCUSSION

### I.      The Trial Court's Failure to Suppress Evidence

¶9          Stephens first argues the trial court erred when it failed to suppress all the evidence the deputy seized during his search. Stephens argues the encounter became nonconsensual once she declined the request to search her bag and that there were no lawful grounds to search the bag and its contents under these circumstances.

¶10         Stephens did not move to suppress the evidence or otherwise object to its admission. Stephens actually acquiesced to its admission. Stephens informed the court the first day of trial that she would not seek to suppress the evidence so long as the deputy's trial testimony about the incident was consistent with his pretrial interview. In short, Stephens told the court the evidence was admissible unless the deputy's testimony revealed previously unknown grounds for suppression. Stephens never claimed the deputy's testimony varied from his interview. When a defendant expressly declines to object to evidence and agrees to its admissibility, any error is invited and cannot be raised on appeal. *State v. Pandeli*, 215 Ariz. 514, 528, ¶ 50 (2007). Furthermore, when a party invites error, we do not review for fundamental error. *State v. Logan*, 200 Ariz. 564, 565, ¶ 9 (2001).

¶11         If we assume arguendo that Stephens did not invite error, we may still find that Stephens' failure to file a motion to suppress waived appellate review. Our supreme court has recognized that the failure to seek suppression of evidence on a specific ground can waive appellate review of that issue. *State v. Newell*, 212 Ariz. 389, 398, ¶ 34 (2006); *State v. Tison*, 129 Ariz. 526, 535 (1981). This case makes the reasons for waiver readily

---

[1]      We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

apparent. Because Stephens never moved to suppress the evidence, she eliminated the incentive, not to mention the necessity, for the State to develop a theory of admissibility or introduce additional evidence to prove the search and seizure were legal. It is not sufficient that the State introduced evidence at trial that generally addressed the factual circumstances that led to the search. Evidence that supports the constitutionality of a search need not be admissible at trial. *State v. Adamson*, 136 Ariz. 250, 258 (1983). We do not know what theories the State could have advanced and supported with additional evidence to prove the search and seizure were legal if Stephens had filed a motion to suppress. To paraphrase our supreme court, Stephens took her chances on a favorable verdict, reserved a "hole card" and now seeks reversal on appeal of an issue she could have addressed and cured at trial. *State v. Valverde*, 220 Ariz. 582, 585, ¶ 12 (2009). For these reasons, we also find Stephens has waived appellate review of this issue.

## II. Stephens' Invocation of Her Constitutional Rights

**¶12** Stephens next argues the trial court erred when it admitted evidence that she invoked her constitutional rights during the encounter with the deputy. The deputy testified twice that Stephens told him it was her constitutional right to decline to give consent to search her bag and that he told her he agreed. The deputy also stated Stephens told the deputy he was violating her rights when he searched her bag.[2] Stephens did not object. The State may not introduce evidence of a defendant's invocation of constitutional rights as direct evidence of guilt. *State v. Stevens*, 228 Ariz. 411, 417, ¶ 16 (App. 2012). To do so can may result in fundamental error. *Id.* at ¶¶ 16-18.

**¶13** In *Stevens*, the State introduced evidence that the defendant repeatedly invoked her rights when police entered her home without a

---

[2] We address only the instances Stephens complains of and identifies within the record. Stephens' opening brief identifies another instance in which she claims the deputy testified Stephens invoked her rights. She further claims that the deputy testified that denial of a request to search is evidence of deceit and guilt. The portions of the record to which Stephens directs us reveal no such testimony. Stephens also argues the trial court erred when it allowed the State to reference Stephens' invocation of her rights in closing argument. Again, that portion of the record Stephens directs us to reveals no such argument and our review of the record shows the State never referenced Stephens' invocation of her rights during closing or rebuttal argument.

search warrant. *Id.* at 413, ¶ 4. In that case, when the State asked what it means when a suspect tells an officer the officer cannot enter a house without a warrant, an officer testified that it means there is something in the house the suspect does not want the officer to see. *Id.* The State then argued in closing that the defendant invoked her rights because she knew police would find methamphetamine and drug paraphernalia in her house. *Id*. at 414, ¶ 4.

**¶14**　　　　This case is not analogous to *Stevens*. The State did not introduce and the deputy never testified that Stephens' invocation of her rights was evidence of guilt. The deputy never referenced Stephens' invocation of her rights when he identified the factors that caused him to seek to investigate further or the factors that caused him to ultimately arrest Stephens. Furthermore, the State never referenced Stephens' invocation of her rights in closing argument. The only reference to Stephens' invocation of her rights was when the deputy testified that Stephens stated it was her constitutional right to decline consent to search her bag and claimed his subsequent actions violated her rights.

**¶15**　　　　Stephens also did not suffer prejudice from the admission of this evidence. In *Stevens*, we found the defendant suffered no prejudice in regard to a charge of possession of drug paraphernalia despite the officer's testimony that invocation of a constitutional right is evidence of guilt. *Id.* at 417, ¶ 18. This was because investigators found paraphernalia in the defendant's bedroom and the defendant herself physically possessed another item of paraphernalia. *Id.* We found this evidence was more probative of the defendant's guilt of possession of paraphernalia than was the invocation of her constitutional rights and, therefore, the defendant suffered no prejudice.[3] *Id.* Similarly, here, Stephens personally possessed the bag that contained the methamphetamine and the paraphernalia, which is more probative of guilt than her invocation of her rights. In addition, the jury acquitted Stephens of another count of drug possession, which further shows the jury found little or no relevance to Stephens' invocation of her rights in making its verdict.

---

[3]　　　　In *Stevens*, we found the officer's testimony prejudiced the defendant in regard to a separate count of possession of dangerous drugs because investigators found the drugs in another person's bedroom and there was nothing but the defendant's invocation of her rights and the officer's testimony to connect the defendant to the drugs. *Stevens*, 228 Ariz. at 417, ¶ 17.

## III.    Admission of Profile Evidence

¶16        Stephens argues the trial court erred when it admitted profile evidence as substantive evidence of her guilt.  Stephens contends that the profile evidence consisted of the deputy's testimony regarding the types and purposes of drug paraphernalia dealers frequently carry; the general amount of drugs dealers possess in contrast to the amounts people who transport drugs may possess; that dealers frequently have more than one cell phone and sometimes have prepaid phones; that dealers use "disclaimers" and "concealment methods," both of which avert suspicion; and that undue nervousness and sudden changes in demeanor can be indicative of drug activity.

¶17        Stephens further argues the trial court erred in regard to how it allowed the State to use that evidence.  Stephens argues the trial court erred when it allowed the deputy to apply the "disclaimer" and "nervousness" factors to the facts of this case and permitted the State to address that evidence in closing.  Finally, Stephens also asserts the trial court erred when it admitted the deputy's testimony that he arrested Stephens because he believed she was selling drugs.  Stephens argues this was an inadmissible opinion.  Stephens contends this combined evidence caused the jury to determine her guilt based on the facts of a hypothetical drug dealer rather than the facts of the case.  However, Stephens did not object to any of this evidence for the reasons she presents on appeal, so we review only for fundamental error.[4] *See State v. Hamilton*, 177 Ariz. 403, 408 (App. 1993) ("An objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds.").

¶18        The deputy's testimony regarding this type of evidence was based on his formal training and experience, which he testified to at length.  So long as counsel lays the proper foundation, a law enforcement officer may testify regarding "the general activities and methods of street-level narcotics dealers."  *State v. Carreon*, 151 Ariz. 615, 616-17 (App. 1986).  This includes whether a defendant possessed drugs for sale rather than personal use, the identification of narcotics, and how dealers package drugs when they are for sale.  *Id.* at 617.  The officer may then apply his or her knowledge of those activities and methods to the facts of the case at issue.  *Id.*  Such testimony does not invade the province of the jury, but assists the jury in

---

[4]        Stephens raised a single relevance objection to a question that addressed trafficking in methamphetamine, which the trial court overruled.

understanding the evidence. *State v. Fornof*, 218 Ariz. 74, 79-80, ¶ 21 (App. 2008). Finally, once the trial court admitted the evidence, the State could address it in closing argument and urge the jury to draw reasonable inferences and reach specific conclusions based on that evidence. *See State v. Bible*, 175 Ariz. 549, 602 (1993).

**¶19** Stephens is correct that our supreme court has condemned the use of profile evidence as substantive evidence of guilt. *See State v. Lee*, 191 Ariz. 542, 545, ¶ 12 (1998). *Lee* is distinguishable, because in that case the supreme court described drug courier profile evidence as an "informal," "abstract" and "loose assortment of general, often contradictory, characteristics and behaviors used by police officers to explain their reasons for stopping and questioning persons about possible illegal drug activity." *Id.* at 544, ¶ 10. Profile evidence creates a high risk that a jury will convict a defendant "not for what he did, but for what others are doing." *Id.* at 545, ¶ 12 (quoting *State v. Cifuentes*, 171 Ariz. 257, 257 (App. 1991)). In *Lee*, there was virtually no evidence other than the profile to connect the defendant to the crime. *Id.* at 546, ¶ 19. In contrast, ample evidence connects Stephens to the methamphetamine and paraphernalia, and the challenged testimony did not create a drug courier profile. Rather, the testimony was admissible to aid the jury in its understanding of the evidence. *See Carreon*, 151 Ariz. at 617.

## CONCLUSION

**¶20** For the above stated reasons, we affirm Stephens' convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: AA