NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

HUMBERTO LARA, JR., *Appellant*.

No. 1 CA-CR 18-0384
FILED 6-6-2019

Appeal from the Superior Court in Maricopa County
No. CR2017-151699-001
The Honorable Ronda R. Fisk, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**C R U Z**, Judge:

¶1        After a jury trial, Humberto Lara, Jr. was convicted of aggravated assault.  On appeal, Lara argues the superior court erred by admitting improper opinion testimony and that the prosecutor committed misconduct by vouching for the victim's testimony.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In November 2017, C.P. was walking to work when a woman approached him.  C.P. noticed she was upset and saw a man following her in a truck.  C.P. went to speak with him and recognized he was C.P.'s co-worker, Lara.  After the two spoke for about fifteen minutes, Lara pulled a metal object from the truck and used it to strike C.P.'s head, causing C.P. to fall to the ground.  While C.P. was still down, Lara struck C.P. again in the back.

¶3        At trial, C.P. testified that as he spoke to Lara by the truck, Lara was "reaching for something metal" and struck C.P. with "a tire-iron-looking" item, which was "long, metal, [with] a little bit of shine to it."  As a result, C.P. was "bleeding pretty heavily" and required several stitches behind his ear and neck, chin and shin.  The superior court admitted photographs of C.P.'s injuries.

¶4        Buckeye Police Officer Hauschild, who responded to C.P.'s 911-call, testified that C.P. "had an actual gash wound like open laceration [on] the right side of his neck."  The prosecutor showed Officer Hauschild a photograph of C.P.'s injuries and asked, based on the officer's "training and experience, is that injury consistent with something that could have been caused by a fist?"  The superior court sustained defense counsel's objection on grounds of speculation and foundation.  The prosecutor questioned, "[i]n your training and experience, have you seen an injury like that come from a fist?"  Officer Hauschild answered, "[n]o, I haven't."  The

prosecutor then asked, "have you seen injuries come like that from an object?" and Officer Hauschild answered, "[y]es."

¶5 Buckeye Police Detective Delgado also testified for the State. Showing him the same photograph, the prosecutor asked, "based on your training and experience and particularly your experience with persons crimes, . . . have you ever seen that type of injury be caused by simply a fist?" The superior court sustained defense counsel's objection on the basis of foundation. After questioning Detective Delgado about his relevant work experience, including four years of work in "persons crimes" and about fifty injuries resulting from blunt force, the prosecutor asked, "is that the type of injury that you have seen caused by a fist?" Defense counsel objected again, and the superior court sustained the objection on speculation. The superior court then overruled defense counsel's objection to the prosecutor's question, "have you ever seen [an injury like] that caused simply by a fist?" Detective Delgado answered, "[n]o." Again, the superior court overruled defense counsel's speculation objection to the prosecutor's next question, "have you seen injuries like that caused by an object?" Detective Delgado answered, "[y]es."

¶6 A third witness, Buckeye Police Detective Rourke, testified for the State. The prosecutor initially asked about his relevant experience. Then, the prosecutor showed Detective Rourke the same photo she showed the other two officers and asked, "have you ever seen that type of injury caused simply by a fist?" Defense counsel did not object, and Detective Rourke answered he had not; but, answered affirmatively when asked whether he had seen similar injuries caused by objects.

¶7 After the trial, the jury found Lara guilty of aggravated assault and it also found that the aggravated assault was a dangerous offense. The jury also found that the offense caused physical, emotional, or financial harm to the victim as an aggravating factor. Lara admitted to the commission of a prior dangerous offense. The superior court sentenced Lara to twelve years' imprisonment. Lara timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

I. Standard of Review

¶8 Lara objected to the officers' testimony below for different reasons than he now raises on appeal. *See State v. Hamilton*, 177 Ariz. 403,

408 (App. 1993) ("an objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds."). Lara also did not raise any objections for prosecutorial misconduct during trial. Because Lara raises these issues for the first time on appeal, we review for fundamental error. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018).

¶9 To establish fundamental error, a defendant bears the burden of "showing that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *Id.* If a defendant establishes fundamental error under either prong one or two, he must make a separate showing of prejudice. *Id.* Lara has not met his burden of establishing fundamental error.

II. Opinion Testimony

¶10 Lara argues the superior court erred by allowing officers to provide improper "hybrid lay/expert" opinion testimony that C.P.'s injuries were consistent with injuries caused by an object. We disagree.

¶11 At trial, the superior court properly sustained defense counsel's speculation and foundation objections in response to the prosecutor's line of questioning about a photograph showing C.P.'s injuries. After the officers testified about their training and experience with "persons crimes," specifically assaults, the superior court overruled defense counsel's further objections. And the officers testified that C.P.'s injuries were consistent with the types of injuries they had seen caused by an object and not a fist.

¶12 Arizona Rule of Evidence ("Rule") 701 permits opinion testimony by lay witnesses that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge" within the scope of expert testimony. When a lay witness is "drawing a reasonable inference from [his] firsthand knowledge and perceptions of a situation, the witness is competent to voice [his] opinion." *State v. Peltz*, 242 Ariz. 23, 29, ¶ 17 (App. 2017) (internal quotations and citation omitted).

¶13 Here, the officers' opinions were based on their perceptions and not scientific, technical, or specialized knowledge. All the officers offered opinions only after viewing a photograph of the victim's injuries. Specifically, Officer Hauschild's testimony stemmed from his firsthand

observation of C.P.'s injuries when the officer interviewed the victim at the hospital. The officers provided their opinions based on their training and experience regarding their personal observations of other physical injuries. And their testimony assisted the jury in determining a fact in issue—whether the victim suffered an aggravated assault with a dangerous instrument. *See* A.R.S. § 13-1204(A)(2). Accordingly, the testimony was admissible under Rule 701. This was not fundamental error.

III.    Prosecutorial Misconduct

**¶14**    Lara argues the prosecutor committed misconduct by improperly vouching for C.P.'s testimony through the officers' testimony. We disagree.

**¶15**    To secure reversal for prosecutorial misconduct, a defendant must show the prosecutor's actions were improper and "a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying the defendant a fair trial." *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004). Impermissible vouching occurs "(1) when [the] prosecutor places the prestige of the government behind its witness, and (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Doerr*, 193 Ariz. 56, 62, ¶ 24 (1998) (citation omitted). A prosecutor places the prestige of the government behind a witness by personally assuring the jury of the witness's veracity. *See State v. Dumaine*, 162 Ariz. 392, 401 (1989), *disapproved on other grounds by State v. King*, 225 Ariz. 87 (2010).

**¶16**    No misconduct occurred here. Lara does not contend that the prosecutor made any personal assurances to the jury about C.P.'s truthfulness. The prosecutor did not express a personal belief regarding C.P.'s penchant for truthfulness. Nor did the prosecutor suggest that information not in evidence supported C.P.'s testimony or the State's theory of the case. Instead, Lara asserts that the State "indirectly vouched for [C.P.]'s credibility by having all three testifying officers opine about the causation of his injuries." Contrary to Lara's argument, the prosecutor did not elicit testimony "that fists could not have caused the injuries presented." Rather, the officers testified that, in their time as police officers, they had never seen that type of injury caused by a fist. Accordingly, the prosecutor's actions did not constitute improper vouching. No fundamental error occurred.

## CONCLUSION

**¶17**        For the foregoing reasons, we affirm Lara's conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:        JT