918 P.2d 1081

STATE of Arizona, Appellee,

v.

Connie Gail JANSING, Appellant.

No. 1 CA–CR 93–0464.

Court of Appeals of Arizona,
Division 1, Department D.

March 28, 1996.

Review and Cross–Petition for
Review Denied June 19, 1996.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, for Appellee.

Jan J. Raven, Phoenix, for Appellant.

GARBARINO, Presiding Judge.

Connie Gail Jansing (defendant) appeals her convictions and sentences for manslaughter, a class 3 dangerous felony; aggravated assault, a class 2 felony; two counts of endangerment, class 6 felonies; aggravated driving while under the influence of intoxicating liquor (DUI), a class 5 felony; and aggravated driving with a blood alcohol concentration of 0.10 or more, a class 5 felony. On appeal, defendant claims that the trial court erred by:

(1) ruling that evidence regarding a possible design defect in the gas tanks of the victim's Chevrolet truck was not relevant to the issue of causation on the manslaughter charge;

(2) denying her motion for directed verdict on the aggravated assault charge;

(3) denying her request for a jury instruction on the lesser-included offense of assault;

(4) denying her request for a jury instruction concerning evidence that the victim was driving without headlights; and

(5) ruling that her aggravated assault conviction constituted a dangerous crime against children pursuant to Arizona Revised Statutes Annotated (A.R.S.) section 13-604.01 (1989).

We find no error in the trial court's rulings on issues one through four, and affirm defendant's convictions on all counts. We conclude that the trial court misinterpreted A.R.S. section 13-604.01 and the Arizona Supreme Court's holding in *State v. Williams*, 175 Ariz. 98, 854 P.2d 131 (1993), and we vacate defendant's sentence on the aggravated assault conviction (Count II) and remand for resentencing on that count.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of November 18, 1991, while driving with a suspended license and a blood alcohol concentration of at least 0.23, defendant ran a stop sign at the intersection of 96th Street and the Apache Trail in Mesa. Defendant's Mazda truck struck the passenger side of a Chevrolet truck driving on Apache Trail. The Chevrolet truck burst into flames upon impact, killing the truck's driver. Defendant's three children were in the Mazda when the accident occurred. Two of the children were basically unharmed, but defendant's son sustained burns on his hands, face, and back, a complex laceration on his lower back, and a possible skull fracture.

Defendant was indicted on charges of manslaughter, aggravated assault, two counts of endangerment, and two counts of aggravated DUI. At trial, defendant testified that she had consumed "a couple of beers" the evening of the accident. The Department of Public Safety criminalist who tested defendant's blood testified, however, that a person matching defendant's physical characteristics would have had to consume the equivalent of ten beers to obtain a 0.23 blood alcohol concentration.

Defendant admitted that she had failed to stop at the stop sign, but testified that she had "slowed down" at the intersection. The

Department of Public Safety accident reconstructionist who investigated the accident testified that defendant's truck was traveling forty miles per hour when it struck the victim's truck. He further testified that, had defendant stopped at the stop sign and then proceeded, her truck would have been traveling approximately fifteen miles per hour when it reached the point of collision.

A jury found defendant guilty of all charges. The trial court imposed the maximum, aggravated term of fifteen years imprisonment on the manslaughter charge. Defendant also received sentences of one and one-half years for one of the endangerment counts, time already served for the other endangerment count, and two and one-half years for each of the aggravated DUI counts. These sentences were to run concurrently.

The State alleged in the indictment that the aggravated assault charge, which was premised on the injuries sustained by defendant's son, constituted a dangerous crime against children pursuant to A.R.S. section 13–604.01, and the trial court agreed. The court mitigated defendant's sentence by the maximum allowable amount of five years, but was nevertheless required by section 13–604.01 to sentence her to a twelve-year term. This sentence was to be served consecutively to her other sentences. Under section 13–604.01, defendant is ineligible for release on any basis until she has served the entire sentence. *See* A.R.S. § 13–604.01(B), (D), (E). Defendant timely appealed her convictions and sentences.

## DISCUSSION

### I. *Admissibility of Possible Design Defect Evidence*

Defendant argues that the trial court erred by precluding as irrelevant evidence of a possible design defect in the placement of a "sidesaddle" gas tank on the victim's Chevrolet truck. "The trial court has considerable discretion in determining relevance and admissibility of evidence," and we will not reverse its ruling unless we find a clear abuse of that discretion. *State v. Kiper*, 181 Ariz. 62, 65, 887 P.2d 592, 595 (App.1994).

Defendant asserts that evidence of the alleged defective placement of the sidesaddle gas tank was relevant to the manslaughter charge because it could have led the jury to conclude that her actions were not the proximate cause of the victim's death. She argues that, without this evidence, the jury was not able to consider whether the true cause of the victim's death may have been attributed to an alleged design defect, which defendant could not possibly have foreseen.

■ The jury could convict defendant of manslaughter only if it found that her recklessness was both an actual cause (or "cause-in-fact") and a proximate cause of the victim's death. *See State v. Marty*, 166 Ariz. 233, 236, 801 P.2d 468, 471 (App.1990); Wayne R. LaFave & Austin W. Scott, Jr., *Handbook on Criminal Law* § 35, at 248 (1972) (*Handbook on Criminal Law*). A defendant's act is not a proximate cause of a victim's death if the death is in fact brought about by an intervening event that acts as a superseding cause. *See State v. Hall*, 129 Ariz. 589, 594, 633 P.2d 398, 403 (1981); *State v. Powers*, 117 Ariz. 220, 224, 571 P.2d 1016, 1020 (1977). Courts distinguish, however, between intervening events that are merely coincidental and those that are a response to the defendant's prior actions. *Hall*, 129 Ariz. at 594, 633 P.2d at 403. An intervening event that is a coincidence will be a superseding cause if it was unforeseeable; an intervening event that is a response will be a superseding cause only if it was abnormal *and* unforeseeable. *Id.; State v. Govan*, 154 Ariz. 611, 615–16, 744 P.2d 712, 716–17 (App. 1987). If an intervening event is a superseding cause, it negates the defendant's criminal liability for the victim's death. *See Powers*, 117 Ariz. at 225, 571 P.2d at 1021.

According to defendant, the allegedly defective placement of the gas tank on the Chevrolet truck was the cause of the victim's death. She argues that she could not have foreseen that the victim would be driving a vehicle with a potentially fatal design defect, and therefore, the defect was a superseding cause of the victim's death that negated any criminal liability on her part. Thus, argues defendant, the trial court abused its discre-

tion in ruling that evidence of the design defect was irrelevant. We disagree.

■ Defendant asserts that she needed only to prove that the intervening event was unforeseeable for it to qualify as a superseding cause. This is incorrect. The fire was a "response" to defendant's act of striking the victim's truck. *See Handbook of Criminal Law* § 35, at 258. Thus, for the design defect to be a superseding cause that would relieve defendant of criminal liability, it must have been both abnormal and unforeseeable. *See Hall,* 129 Ariz. at 594, 633 P.2d at 403.

Even if defendant were only required to prove that the design defect was unforeseeable, her argument would still fail. Regardless of the design defect, it is not unforeseeable that a truck will catch fire when struck by another vehicle traveling forty miles per hour. For example, in *Buehler v. Whalen,* 41 Ill.App.3d 446, 355 N.E.2d 99, 103–04 (1976), *aff'd,* 70 Ill.2d 51, 15 Ill.Dec. 852, 374 N.E.2d 460 (Ill.1977), a civil action arising from an automobile accident, the defendant argued that a design defect in the gas tank of the victim's car caused the car to ignite when she struck it while traveling thirty miles per hour. As in this case, the defendant claimed that, because she could not have foreseen the defect in the gas tank or the resulting injuries to the plaintiffs, the defect constituted a superseding cause relieving her of liability. *Id.* at 110. The court disagreed:

> In our view ... the instantaneous fire which invaded the auto's passenger compartment, was not such an unusual or infrequent consequence of a rear-end collision as to be unforeseeable. [Defendant] takes too narrow a view in suggesting that the design defects must themselves be foreseeable, the precise manner that the plaintiffs' injuries were enhanced is not significant, so long as it was reasonably foreseeable that such injuries would occur and they were the natural and probable result of the negligent act.

*Id.* at 111.

■ Defendant accepted the risk that she might hit another vehicle and kill the occupants when she chose to drive while intoxicated and not stop at the stop sign. It was neither unforeseeable nor abnormal that the cause of death would be a collision-related fire. Thus, the fire—even if it resulted from a design defect in the placement of the gas tank—could not have been a superseding cause that would have relieved defendant of responsibility for the victim's death. *Cf. State v. Freeland,* 176 Ariz. 544, 548, 863 P.2d 263, 267 (App.1993) (holding that a victim's failure to wear a seat belt was not a superseding cause of injury in an aggravated assault case arising from a DUI-related accident because "[o]ne who drinks and drives should reasonably foresee that some among the potential victims of drunken driving will not wear seat belts and that such victims, among others, might be seriously injured in an alcohol-induced collision"). The trial court therefore acted within its discretion when it excluded as irrelevant the evidence of a possible design defect.

## II. *Denial of Defendant's Motion for Judgment of Acquittal*

■ Defendant argues that the trial court erred by denying her motion for judgment of acquittal on the aggravated assault charge pursuant to Rule 20 of the Arizona Rules of Criminal Procedure. We will affirm the trial court's denial of a motion for acquittal if, viewing the evidence in the light most favorable to sustaining the verdict, substantial evidence exists to support the guilty verdict. *State v. Scott,* 177 Ariz. 131, 138, 865 P.2d 792, 799 (1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 73 (1994). "Substantial evidence" is more than a mere scintilla and is proof that a reasonable person could accept as adequate and sufficient to establish guilt beyond a reasonable doubt. *Id.*

The aggravated assault charge against defendant arose from injuries sustained by her son. The State asserted that defendant committed aggravated assault upon her son by using a dangerous weapon. *See* A.R.S. § 13–1204 (1989). William Schiller, the physician who treated defendant's son, testified that the boy sustained burns on his hands, face, and back, and a complex laceration on his lower back. The physician also testified that, although the injury did not appear on a CT

Scan, he was "pretty sure" that defendant's son had sustained a skull fracture.

Defendant argues that the prosecution failed to prove that her use of a dangerous instrument, her truck, caused these injuries. According to defendant, the evidence actually established that her son sustained his injuries immediately *after* the accident because the interior of defendant's truck showed no signs of fire, and therefore her son must have received his burns as he walked around outside the Mazda truck. She further reasons that, if her son sustained the burns after the collision, while she lay unconscious on the ground, she could not have caused the injuries by use of her truck and could not be guilty of aggravated assault.

■ The State presented evidence that the medical personnel who cared for defendant's son noticed blood in his right ear when he arrived at the hospital. Dr. Schiller testified that the presence of blood indicated a fracture at the base of the skull. From this evidence, the jury could have found that defendant's son sustained a skull fracture in the collision which was caused by defendant's "use" of her truck while intoxicated. "Where the evidence raises a question of fact for the jury and where such evidence, if believed, is sufficient to sustain conviction, the denial of a motion for judgment of acquittal is not error." *State v. Fristoe*, 135 Ariz. 25, 32, 658 P.2d 825, 832 (App.1982). Accordingly, the trial court did not err by denying defendant's motion for acquittal on the aggravated assault charge.

### III. Denial of Jury Instruction on the Lesser–Included Offense

■ Defendant also argues that the trial court erred by refusing her request for an instruction on the lesser-included offense of assault. An instruction on a lesser-included offense is appropriate if the jury could rationally find that the State failed to prove the element distinguishing the greater offense from the lesser offense. *See State v. Celaya*, 135 Ariz. 248, 252, 660 P.2d 849, 853 (1983). Here, the distinguishing element between assault and aggravated assault is defendant's use of a dangerous weapon, her truck. The evidence does not support a theory that defendant somehow committed assault other than by the use of her truck. She is either guilty of aggravated assault or guilty of nothing on this count. *See State v. Noriega*, 142 Ariz. 474, 481, 690 P.2d 775, 782 (1984), *overruled on other grounds, State v. Burge*, 167 Ariz. 25, 28 n. 7, 804 P.2d 754, 757 n. 7 (1990). The jury could not rationally have found defendant guilty of simple assault, and she was not entitled to an assault instruction.

### IV. Denial of Jury Instruction Concerning Evidence that the Victim was Driving Without Headlights

Relying on *State v. Shumway*, 137 Ariz. 585, 672 P.2d 929 (1983), defendant argues that the trial court should have instructed the jury that it could consider whether the victim's truck was traveling without headlights at the time of the accident when determining whether defendant had the requisite state of mind to be convicted of manslaughter. The defendant in *Shumway*, a negligent homicide case, was driving with a blood alcohol content of at least 0.11 when he struck a car that turned into his path. *Id.* at 587, 672 P.2d at 931. Under those facts, the Arizona Supreme Court found that the trial court's refusal to instruct the jury on the victim's duty to yield the right of way to the defendant's car was error. *Id.* at 588–89, 672 P.2d at 932–33. The court reasoned that the jury could consider the victim's conduct when determining whether the defendant's actions were criminally negligent: "[T]he defendant might prove that he expected the victim to yield and, therefore, did not slow down as he approached the intersection. The jury might therefore conclude that the defendant's failure to slow down was not criminal negligence. . . ." *Id.* at 588, 672 P.2d at 932.

■ *Shumway* is distinguishable from this case. Defendant admitted that she failed to stop at the stop sign at 96th Street and the Apache Trail. A person who consumes the equivalent of ten beers, operates a vehicle, and then deliberately fails to stop at a stop sign "is aware of and consciously disregards a substantial and unjustifiable risk" that her actions could cause death. *See* A.R.S. § 13–105(9)(c) (Supp.1995) (defining "recklessly" and providing that a person acts recklessly

when she is unaware of a risk solely by reason of voluntary intoxication); A.R.S. § 13–1103(A)(1) (1989) (providing that "[a] person commits manslaughter by recklessly causing the death of another person"). By failing to stop at the stop sign, especially while driving at night, defendant accepted the risk that she could, for example, strike and kill a pedestrian or bicyclist. Her acceptance of that risk "constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *See* A.R.S. § 13–105(9)(c). Her culpability is not negated by the fact that she caused the death of another driver who may have been driving without headlights.

A defendant is "entitled to an instruction on any theory of the case reasonably supported by the evidence." *Shumway*, 137 Ariz. at 588, 672 P.2d at 932. The evidence in this case does not reasonably support the theory that, because the victim of defendant's actions was a driver who may have been traveling without headlights, defendant merely "fail[ed] to perceive" the risk that she might kill someone by running a stop sign, at night, while driving under the influence of alcohol. *See* A.R.S. § 13–105(9)(d) (Supp. 1995) (defining "criminal negligence" as a "fail[ure] to perceive a substantial and unjustifiable risk"); A.R.S. § 13–1102(A) (1989) ("A person commits negligent homicide if with criminal negligence such person causes the death of another person."). We find no error in the trial court's refusal to give the requested instruction.

## V. *Sentencing Pursuant to A.R.S. Section 13–604.01*

 Defendant's final argument on appeal is that the trial court erred by ruling that the aggravated assault against her son was a "dangerous crime against children" within the meaning of A.R.S. section 13–604.01. We agree, and vacate defendant's sentence on the aggravated assault conviction.

In *State v. Williams*, 175 Ariz. 98, 854 P.2d 131 (1993), the Arizona Supreme Court examined the application of section 13–604.01 to crimes involving reckless conduct. As in defendant's case, the defendant in *Williams* was convicted of aggravated assault for recklessly causing physical injury using a dangerous instrument. *Id.* at 99, 854 P.2d at 132. *Williams* similarly arose from a drinking-related accident resulting in injury to a child under the age of fifteen. *Id.* In that case, the defendant struck a station wagon in which a fourteen-year-old boy was a passenger. *Id.* The boy was thrown from the station wagon and badly injured. *Id.* Because the aggravated assault involved the use of a dangerous instrument against a victim under the age of fifteen, *see* A.R.S. § 13–604.01(J)(1)(b) (1989), the trial court applied the enhanced sentencing provisions of the Dangerous Crimes Against Children Statute. 175 Ariz. at 99, 854 P.2d at 132.

 The supreme court vacated, concluding that application of section 13–604.01 under the facts in *Williams* was contrary to the legislative intent behind the provision. *See id.* at 103–04, 854 P.2d at 136–37. Crucial to the court's conclusion was its determination that section 13–604.01 applies only to "crimes in which a child is the *target* of the criminal conduct." *Id.* at 101, 854 P.2d at 134 (emphasis added) ("That is to say, a dangerous crime against a child is a crime against a child *qua* child."). In this regard, the court observed that "[t]he legislative history indicates quite clearly that the enactment of § 13–604.01 was calculated to reach criminals who prey specifically upon children." *Id.* at 102, 854 P.2d at 135. Thus, to qualify as a dangerous crime against children, "the defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *Id.* at 103, 854 P.2d at 136.

The court found no evidence in *Williams* that the defendant's conduct was "directed at or focused upon" the fourteen-year-old victim. *Id.* at 104, 854 P.2d at 137. Rather, his "reckless actions created a risk to everyone around him and were not aimed at the young boy who ultimately became his victim." *Id.* at 100, 854 P.2d at 133. Accordingly, the defendant was not subject to the enhanced sentencing provisions of section 13–604.01 for his aggravated assault conviction.

Although it concluded that the aggravated assault in *Williams* was not a dangerous crime against children, the court emphasized that a child conceivably could be the target of a reckless crime. *Id.* at 101, 854 P.2d at 134. As an example, the court described the driver who harasses a well-marked school bus and recklessly injures a child passenger. *Id.* That driver "can be said to have the focus sufficient to satisfy § 13–604.01. Such a reckless crime would be 'against children' because it manifests a conscious disregard of a risk to children, *as opposed to the general public.*" *Id.* (emphasis added) (citation omitted).

The relevant facts of this case differ from *Williams* in only one aspect: the victim of defendant's aggravated assault was a passenger in her own car and, unlike the defendant in *Williams,* she therefore knew that he was present and under fifteen. *Cf. id.* at 104, 854 P.2d at 137 ("[T]here was no evidence that [Williams's] behavior was directed at or focused upon the victim, or that he was even aware of the minor's presence in the station wagon."). The State argues that this distinction is crucial. It contends that, because defendant consciously disregarded the obvious danger in which she placed her children when she drove under the influence of alcohol, she could easily foresee that a child—her own—might be a victim of her reckless conduct. Thus, because defendant's actions "manifest[ed] a conscious disregard of a risk to children," *see id.* at 101, 854 P.2d at 134, her reckless conduct constituted a dangerous crime against children. We disagree.

Although defendant's actions indeed "manifest[ed] a conscious disregard of a risk to children," that risk was no different than the risk she imposed upon the general public when she chose to drive a car after consuming the equivalent of ten beers. *See id.* As in *Williams,* defendant's reckless actions "created a risk to everyone around [her] and were not aimed at the young boy who ultimately became [her] victim." *Id.* at 100, 854 P.2d at 133.

■ To be guilty of a dangerous crime against children, a "defendant's conduct must be focused on, directed against, aimed at, or target a victim under the age of fifteen." *Id.*

at 103, 854 P.2d at 136. The defendant must "prey specifically upon children." *Id.* at 102, 854 P.2d at 135. As reprehensible as defendant's conduct may have been, it was not directed against or aimed at her son. He, like the driver of the Chevrolet truck, was simply an unfortunate victim of defendant's "reckless and unfocused" actions. *See id.* "The spirit and purpose of § 13–604.01 are not well served by applying it to people like [defendant] who do not prey upon helpless children but who fortuitously injure children by their unfocused conduct." *Id.* at 103, 854 P.2d at 136. We therefore vacate defendant's sentence on her aggravated assault conviction (Count II) and remand for resentencing on that count.

## CONCLUSION

We have reviewed the record for fundamental error and have found none. We affirm defendant's convictions on all counts, but vacate the sentence imposed on the aggravated assault conviction (Count II) and remand for resentencing on that count.

LANKFORD and SULT, JJ., concur.