49 P.3d 310

**STATE of Arizona, Appellee,**

v.

**Jason Wayne PAXSON, Appellant.**

**No. 1 CA–CR 00–0781.**

Court of Appeals of Arizona,
Division 1, Department D.

July 9, 2002.

Janet Napolitano, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

George M. Sterling, Jr., Phoenix, Attorney for Appellant.

## OPINION

HALL, Judge.

¶ 1 Jason Wayne Paxson ("defendant") appeals his conviction and sentence for manslaughter, a class two dangerous felony, in violation of Arizona Revised Statutes ("A.R.S.") section 13–1103(A)(1) (1994). After finding defendant guilty based on a stipulated record, the trial court sentenced defendant to the presumptive term of 10.5 years. *See* A.R.S. § 13–604(I) (1998).

¶ 2 Defendant claims that the trial court abused its discretion by: (1) precluding his "air bag" defense, (2) denying his motion to strike the state's allegation that defendant's use of his automobile qualified it as a "dangerous instrument" pursuant to A.R.S. § 13–604(P), and (3) excluding evidence of the victim's blood alcohol content. We uphold the trial court's rulings denying defendant's motion to strike the state's dangerous-nature allegation and excluding the victim's blood alcohol content. But because the trial court

erred by precluding defendant's air bag defense, we reverse defendant's conviction and remand for a new trial.

## FACTS

¶ 3 Defendant was the driver of a 1996 Nissan 200SX involved in a one-car accident on September 17, 1998, at approximately 12:15 a.m. His friend, Joseph Pasquali ("victim"), who was riding in the front passenger seat, died at the scene from injuries suffered when his head struck the windshield. The accident occurred just after defendant had emerged from an s-shaped switchback at the end of a construction zone on Union Hills Drive in Phoenix in which the speed limit was twenty-five miles per hour. The posted speed limit outside the construction zone was forty-five miles per hour. A witness to the accident, who was walking westbound on the north side of Union Hills Drive, told investigating officers that he first noticed the defendant's vehicle when it was ten yards west of the 16th Street intersection. The witness estimated the vehicle's speed as seventy to seventy-five miles per hour. As defendant was traveling east on Union Hills Drive through the 16th Street intersection, he lost control of his vehicle. The vehicle swerved approximately twenty-five to thirty feet in a southeasterly direction before striking the curb and leaving the roadway. The vehicle then continued to travel in an easterly direction south of the roadway before striking a rock which propelled it into the air. After hitting a tree, the vehicle rotated counter-clockwise and came to a rest further south of the roadway. The state's traffic reconstruction expert estimated the vehicle's speed to be forty-five to fifty miles per hour immediately before leaving the roadway.

¶ 4 The victim's blood alcohol content at the time of his death was .16. Defendant was transported to a hospital at which a sample of his blood was drawn and given to the police. Scientific analysis of defendant's blood also showed a .16 blood alcohol content.

## DISCUSSION

## I. PRECLUSION OF AIR BAG DEFENSE

¶ 5 Defendant contends that the trial court abused its discretion by precluding him

from presenting expert testimony from which a jury could have inferred that the passenger-side air bag deployed prematurely, thus distracting the defendant and causing him to veer off the road. "The trial court has considerable discretion in determining the relevance and admissibility of evidence, and we will not disturb its ruling absent a clear abuse of discretion." *State v. Amaya–Ruiz,* 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990).

## A. Rule 16.1(d)

¶ 6 Defendant argues that the trial judge abused her discretion by improperly reconsidering a decision by a previously assigned judge to allow him to present such evidence. *See* Ariz. R.Crim. P. 16.1(d) ("Except for good cause, or as otherwise provided by these rules, an issue previously determined by the court shall not be reconsidered."); *State ex rel. Romley v. Superior Court (Ochoa),* 183 Ariz. 139, 142, 901 P.2d 1169, 1172 (App.1995) (exchange of calendars between two judges does not affect requirement of Rule 16.1(d) that "rulings be reconsidered only upon a showing of good cause").

¶ 7 The record does not support defendant's claim that he had already obtained a favorable ruling on the issue. The discussion on which defendant relies occurred at a pretrial conference after the prosecutor informed the court that he anticipated filing a motion to preclude an air bag defense. No motion at that time was pending before the court, and the judge's comment, "I think it is a viable defense and [ ] I don't think it can be precluded," was more of a rumination than a ruling. At most, his comments were a preliminary ruling. The doctrine of law of the case does not "prevent a different judge, sitting on the same case, from reconsidering the first judge's prior, nonfinal rulings." *State v. King,* 180 Ariz. 268, 279, 883 P.2d 1024, 1035 (1994).

## B. Due Process

¶ 8 Defendant claims that the preclusion of his air bag defense denied him his constitutional due process right to present a defense protected by the Sixth Amendment of the United States Constitution and Article 2,

Sections 4 and 24 of the Arizona Constitution.

¶ 9 Before trial, the state filed a motion to preclude the defendant from introducing any evidence or arguing the merits of an air bag defense. Citing *State v. Jansing,* 186 Ariz. 63, 918 P.2d 1081 (App.1996), the state asserted that a design defect in vehicular manslaughter cases is not a defense. Alternatively, the state argued that no evidence supported defendant's theory that the air bag deployed prematurely, thus rendering as mere speculation the opinion of defendant's expert that premature deployment was a "possibility." After an evidentiary hearing at which defendant did not testify, the trial court, agreeing with the state, precluded the air bag defense as inadmissible pursuant to *Jansing* and because it was "too speculative."

### 1. JANSING

¶ 10 The charge of manslaughter required the state to prove that defendant recklessly caused the death of another person. *See* § 13–1103(A)(1). Defendant contends that the fact-finder should have been allowed to consider the possibility that the passenger-side air bag deployed prematurely, constituting an intervening event that was the superseding cause of the accident rather than any recklessness on his part.

¶ 11 An intervening event is a superseding cause constituting a legal excuse only if unforeseeable and, with benefit of hindsight, abnormal or extraordinary. *See State v. Bass,* 198 Ariz. 571, 576, ¶ 13, 12 P.3d 796, 801 (2000) (overruling *Jansing* and other cases to the extent that they differentiate between "coincidental" and "responsive" intervening acts).

¶ 12 We conclude that the trial court's reliance on *Jansing* was misplaced. Contrary to the state's argument, *Jansing* does not hold that a design defect may never qualify as a superseding cause in a vehicular homicide case. Instead, it holds that a design defect cannot be a superseding cause unless it is both unforeseeable and either abnormal or extraordinary. 186 Ariz. at 67, 918 P.2d at 1085. Thus, the evidence in

*Jansing* of an alleged design defect in the placement of a "sidesaddle" gas tank on the vehicle with which defendant collided after she ran a stop sign at forty miles per hour was properly excluded because the resulting fire, a consequence of defendant's act of striking the victim's truck, was neither abnormal nor unforeseeable. *Id.*[1] Here, on the other hand, a spontaneous deployment of the passenger-side air bag with its accompanying noise[2] would not be a reasonably anticipated event, and such an occurrence might constitute a legal excuse to a charge of vehicular manslaughter because it was both unforeseeable and abnormal or extraordinary. Thus, to the extent that the trial court relied on *Jansing* to preclude defendant's air bag defense, it erred.

## 2. MERE SPECULATION

■ ¶ 13 Although the due process rights embodied within the Sixth Amendment to the United States Constitution and Article 2, Sections 4 and 24 of the Arizona Constitution guarantee criminal defendants a right to present a defense, *State ex rel. Romley v. Superior Court (Roper)*, 172 Ariz. 232, 236, 836 P.2d 445, 449 (App.1992), that right does not extend to presenting irrelevant evidence. *State v. Oliver*, 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988). Evidence is relevant if it has "Any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401 (emphasis supplied).

¶ 14 At the evidentiary hearing, defendant presented the testimony of Charles Dickerson, an expert in accident reconstruction, in support of defendant's air bag defense. Dickerson testified that, based on his visual inspection of the vehicle, the victim's head struck the right upper part of the windshield and windshield header. Dickerson opined that these impact points were consistent with, among other possibilities, the air bag deploying prematurely and deflating before the vehicle struck the tree. The state presented evidence that the victim was not wearing his seatbelt and elicited from Dickerson his agreement that, if such were the case, the victim possibly could have still struck the same areas even if the air bag had deployed properly. Because he could not determine exactly when the air bag deployed, Dickerson stated that it would be "speculative" to say that the air bag deployed before hitting the tree because both possibilities, i.e., proper versus premature deployment, were "equally unknown."

¶ 15 Based on the testimony, there were two possibilities consistent with an unbelted front-seat passenger striking the upper portion of the windshield and the windshield header: (1) the air bag deployed properly, i.e., when the vehicle struck the tree, but the unbelted victim eluded the air bag's protection, or (2) the air bag deployed without warning or apparent reason, startling defendant and causing him to veer to the right and leave the roadway. If the latter possibility is what actually occurred, a reasonable factfinder could have acquitted defendant if not firmly convinced that he acted recklessly.

¶ 16 However, the trial court concluded that defendant's theory regarding premature deployment was "much too speculative." We disagree. Each of these possibilities is speculative in the sense that the evidence is inconclusive as to which of these two scenarios actually occurred, yet it is a certainty that one of these did occur. Fairly construed, Dickerson's testimony was that the probability of one scenario was approximately equal to the other.

¶ 17 The test for relevancy, whether the offered evidence tends to make the existence of any fact in issue more or less probable, "is not particularly high." *Oliver*, 158 Ariz. at 28, 760 P.2d at 1077. "It is not necessary

---

1. Even after *Bass's* elimination of the coincidence-response dichotomy, the preclusion of the design defect in *Jansing* would still be proper because it is not unforeseeable that a person who runs a stop sign at forty miles per hour would collide with another vehicle and cause the other vehicle to burst into flames.

2. Defendant's accident reconstruction expert testified that the sound of an air bag deployment is "unsettling" and compared it to "somebody setting off a gun inside [a] car."

that such evidence be sufficient to support a finding of an ultimate fact; it is enough if the evidence, if admitted, would render the desired inference more probable." *Reader v. Gen. Motors Corp.*, 107 Ariz. 149, 155, 483 P.2d 1388, 1394 (1971). We believe that the desired inference in this case, that the air bag deployed prematurely, although arguably tenuous, is not unreasonable. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 496, 733 P.2d 1073, 1079 (1987) ("to be relevant, evidence need only alter the probability, not prove or disprove the existence, of a consequential fact").

¶ 18 On this record, we conclude that the trial court abused its discretion by excluding the testimony as "much too speculative" to be relevant. It was for the fact-finder at trial, and not the trial court, to choose between the competing inferences. *See State ex rel. McDougall v. Superior Court (Weant)*, 172 Ariz. 153, 156, 835 P.2d 485, 488 (App.1992) ("The resolution of contending inferences and conflicting evidence is the very stuff of which jury trials are made."). The court's ruling prevented defendant from presenting any evidence or argument contrary to the state's theory of causation, thereby effectively precluding defendant from contesting his guilt.[3] *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").

## II. DENIAL OF MOTION TO STRIKE DANGEROUS NATURE ALLEGATION

■ ¶ 19 Defendant argues that the trial court erred when it denied his motion to strike the state's allegation that the vehicle driven by defendant was a dangerous instrument. Citing *State v. Orduno*, 159 Ariz. 564, 769 P.2d 1010 (1989), defendant argues that an allegation of dangerousness is inappropriate in cases in which the victim was a passenger in the defendant's vehicle rather than a

person outside the vehicle. In rejecting this argument, the trial court stated:

> I think the argument that the dangerousness allegation only applies to those situations where someone outside of the car is injured is illogical, in all honesty. I don't think that that is—I think that is a stretch of the interpretation of the law [in] 13-604(P). That particular statute does not make a distinction between victims who are inside or outside of the car. And I am not going to make that distinction as well. So I am going to deny the defendant's motion.

The trial court's interpretation of § 13-604(P) is a question of law that we review de novo. *See State v. Hensley*, 201 Ariz. 74, 76, ¶ 6, 31 P.3d 848, 850 (App.2001).

¶ 20 The state alleged the dangerous nature of the felony pursuant to § 13-604(I). A dangerous felony is one "involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another." § 13-604(P). A "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(11) (1995).

¶ 21 Defendant's reliance on *Orduno* is misplaced. In *Orduno*, our supreme court held that the state may not allege the dangerous nature of a motor vehicle in a DUI case to enhance punishment under § 13-604(F)[4] because the operation of a motor vehicle is a *"necessarily* included element" of every DUI case. 159 Ariz. at 567, 769 P.2d at 1013. The court distinguished previous cases in which an automobile had been considered a dangerous instrument:

> [I]n each of these Arizona cases in which the court enhanced a defendant's sentence because he used a car as a dangerous instrument, the use of the car was not an element of the underlying offense and the

---

**3.** After the trial court granted the state's motion to preclude defendant's air bag defense, defendant waived a jury trial and agreed to submit the case to the court on a stipulated record.

**4.** Section 13-604(F) requires that increased punishment be meted out to anyone convicted of a class four, five, or six dangerous felony.

aggravated offense could have been committed with a different dangerous instrument, such as a gun or knife.

*Id.* at 566, 769 P.2d at 1012. The court expressly limited its holding to DUI cases. *Id.; see also State v. Pitts,* 178 Ariz. 405, 406–07, 874 P.2d 962, 963–64 (1994); *State v. Lara,* 171 Ariz. 282, 285, 830 P.2d 803, 806 (1992) (*"Orduno's* application is limited to DUIs.").

¶ 22 Even if *Orduno* was not so limited, we would reject defendant's invitation to extend it here. Since *Orduno,* Arizona courts have consistently held that a vehicle may qualify as a dangerous instrument pursuant to A.R.S. § 13–604 in non-DUI cases. *See State v. Garcia,* 165 Ariz. 547, 799 P.2d 888 (App.1990) (defendant collided with disabled vehicle being pushed by victim); *State v. Howard,* 163 Ariz. 47, 785 P.2d 1235 (App. 1989) (defendant rear-ended car in which victim was riding). As did the courts in these cases, we find the reasoning of *Orduno* inapplicable because the use of an automobile is not a statutory element of the underlying offense of manslaughter.

█ ¶ 23 As defendant points out, no previous Arizona case specifically addresses whether an automobile may qualify as a dangerous instrument when the victim was a passenger in a vehicle driven by the defendant. But whether a particular victim was located inside or outside a defendant's vehicle is not determinative on whether the vehicle was used in a manner "readily capable of causing death or serious physical injury." The definition of "dangerous instrument" in § 13–604(P) provides no basis to distinguish, as a matter of law, between the risk of injury that a defendant's conduct poses to a passenger inside the defendant's vehicle and all other people that may be placed at risk by defendant's actions. Absent some infirmity in the statute, we may not impose a limiting construction on the legislature's language. *See State v. Bly,* 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980) ("If the presence of a deadly weapon, as an element of the crime or otherwise, moves the legislature to impose more severe punishment for the offense, we must abide by the legislative determination."). Except for the narrow exception carved out

by *Orduno,* the question whether a defendant drove a motor vehicle in a manner "readily capable of causing death or serious physical injury" is one to be resolved by "the trier of fact." *See* § 13–604(P). Therefore, the trial court did not err in denying defendant's motion to strike the dangerous nature allegation.

## III. EXCLUSION OF VICTIM'S BLOOD ALCOHOL CONTENT

█ ¶ 24 Defendant argues that the trial court abused its discretion by excluding evidence of the victim's blood alcohol content. Before trial, the state filed a motion to preclude defendant from offering the victim's blood alcohol content in evidence. During the evidentiary hearing, defense counsel told the court that defendant intended to testify at trial that he had consumed the same amount of alcohol as the victim while they were bar-hopping the evening of the accident. Defendant argues that such evidence was relevant because it could confirm his testimony that he consumed no alcohol outside the presence of the victim. The trial court excluded the victim's blood alcohol content as irrelevant.

¶ 25 As discussed above, we will not disturb a trial court's ruling on relevance and admissibility absent a clear abuse of discretion. *Amaya–Ruiz,* 166 Ariz. at 167, 800 P.2d at 1275. Before trial, the parties stipulated that defendant had a blood alcohol concentration of .16. The trial court did not abuse its discretion in excluding the victim's blood alcohol content.

## CONCLUSION

¶ 26 The trial court abused its discretion when it precluded defendant from presenting relevant and otherwise admissible evidence on the issue of causation, thus depriving defendant of his due process right to contest the state's theory of the case. Therefore, we reverse and remand for a new trial.

CONCURRING: E.G. NOYES, JR. and WILLIAM F. GARBARINO, Judges.