NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JEFFREY THOMAS CRAVETS, *Appellant.*

No. 1 CA-CR 13-0338

FILED 09-04-2014

Appeal from the Superior Court in Mohave County
No. S8015CR201000798
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Mohave County Legal Defender's Office, Kingman
By Ronald S. Gilleo
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maurice Portley and Chief Judge Diane M. Johnsen joined.

---

**B R OW N**, Judge:

**¶1**        Jeffrey Thomas Cravets appeals from his conviction and resulting sentence for first-degree murder.  He argues the trial court erred by providing inaccurate advice relating to his decision to testify, admitting improper evidence, denying his motion to dismiss, and refusing a requested jury instruction.  For reasons that follow, we affirm.

### BACKGROUND

**¶2**        Cravets was indicted for first-degree premeditated murder in connection with the death of his estranged wife.  The victim was found shot to death inside her home.  Cravets' first trial ended in a hung jury and the trial court declared a mistrial.  The jury at his second trial found him guilty as charged and he was sentenced to natural life.  Cravets timely appealed.

### DISCUSSION

A.        Decision to Testify

**¶3**        Cravets argues his conviction should be reversed because the trial court gave him inaccurate advice about the State's ability in the second trial to introduce portions of his testimony from the first trial.  He asserts the court's incorrect advice violated his privilege against self-incrimination and his right to due process as it caused him to waive the privilege and testify at trial.  Because Cravets failed to raise this issue in the trial court, our review is limited to fundamental error.[1]  *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).  In reviewing a claim of error under

---

[1]        In his reply brief, Cravets asserts that because the trial court's advice infringed on his exercise of the privilege against self-incrimination, we must review for structural error.  As explained in *State v. Ramos*, 1 CA-CR 13-0076, 2014 WL 3608572 at *4, ¶ 17 (Ariz. App. July 22, 2014), this type of error does not fall within the narrow category of errors subject to structural error review.

the fundamental error standard, we first determine whether error occurred. *State v. Lucero*, 223 Ariz. 129, 134, ¶ 12, 220 P.3d 249, 254 (App. 2009).

**¶4**        Before Cravets testified at his second trial, the trial court advised him that it was entirely his decision whether to testify:

> If you want to testify, even if your attorneys think you shouldn't, you will testify. If you decide that you do not want to testify, then you will not testify even if your attorneys think you should. If you do not testify, I will instruct the jury that they cannot consider that and cannot hold that against you. If you do testify, and obviously you know how this works because you did this before, you will be subject to cross-examination.
>
> Now, the one quirk here is that if you do not testify, the State may be able to use your prior testimony at the first trial against you, because those are prior statements that you made, so that would not be hearsay. I don't know exactly how the State would propose to do that. The State could probably pick and choose and just enter statements of yours into evidence that they wanted. They wouldn't necessarily have to just have your entire testimony admitted in evidence.
>
> I have no idea how it is that they would proceed to do that; but the chances are, if you do not testify and if there are statements that you made in your testimony at the first trial that the State wanted to use against you, they would be able to do that.

Cravets contends the court's statement was contrary to Arizona Rule of Evidence 106, which provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time."

¶5            Rule 106 "is a partial codification of the rule of completeness." *State v. Prasertphong*, 210 Ariz. 496, 499, ¶ 14, 114 P.3d 828, 831 (2005).  The rule of completeness does not require the admission of an entire statement; instead, only the portion of a statement "necessary to qualify, explain or place into context the portion already introduced" need be admitted.  *Id.* at ¶ 15 (quoting *United States v. Branch*, 91 F.3d 699, 728 (5th Cir. 1996)); *see also* Fed. R. Evid. 106 (Advisory committee's note states that the rule is designed to prevent "the misleading impression created by taking matters out of context.").  In short, Rule 106 would not have required the court to admit Cravets' entire previous trial testimony if the State decided to introduce parts of it.  *See State v. Cruz*, 218 Ariz. 149, 162, ¶ 58, 181 P.3d 196, 209 (2008) ("Rule 106 does not create a rule of blanket admission for all exculpatory statements simply because an inculpatory statement was also made.").

¶6            Cravets argues the trial court misadvised him when it said the State could "pick and choose" which of his prior statements to offer, without letting him know that Rule 106 would allow his counsel to offer other statements required for fairness.  He therefore contends his exercise of the right to testify was not knowing or voluntary.  At most, the court's statement was incomplete, not incorrect.  As the State argues, the court recessed to allow Cravets to confer with his lawyer before deciding whether to testify, and there is no indication in the record that, at the time he decided to testify, Cravets was under the misimpression that if he did not testify the prosecution would have the sole discretion to select which portions of his testimony from the first trial would be admitted.  The cases Cravets cites as support concern rulings by which a trial court interferes with a defendant's exercise of his right to testify; no such interference occurred here.  Accordingly, the trial court did not err in advising Cravets about the State's possible use of portions of his prior trial testimony.

### B.      Admission of Testimony on Demeanor

¶7            The detective who interviewed Cravets at the police station approximately ninety minutes after Cravets reported finding his wife dead testified about Cravets' demeanor during the interview.  Cravets argues that the trial court erred in permitting the detective to testify that during the first portion of the interview, Cravets did not act like other people the detective had interviewed about family members who had been killed.  The sole objection raised at trial to this testimony was "relevance."  On appeal, however, Cravets additionally argues that this portion of the detective's testimony was inadmissible character or profile evidence or improper opinion testimony.

¶8　　　　We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *State v. Fischer*, 219 Ariz. 408, 416, ¶ 24, 199 P.3d 663, 671 (App. 2008). However, "[a] party must make a specific and timely objection at trial in order to preserve that issue for appeal." *State v. Hamilton*, 177 Ariz. 403, 408, 868 P.2d 986, 991 (App. 1993). "If evidence is objected to on one ground and admitted over the objection, other grounds not specified are waived." *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). Hence, Cravet's general objection of "relevance" did not preserve any other issues with respect to the admissibility of evidence. *Hamilton*, 177 Ariz. at 408, 868 P.2d at 991. When an issue is not preserved for appeal by a proper objection, we review solely for fundamental error. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. To prevail under this standard of review, the defendant has the burden of showing both fundamental error and resulting prejudice. *Id.* at ¶ 20.

¶9　　　　There was no error by the trial court in overruling Cravets' relevancy objection to the detective's testimony. The test for relevance is whether the offered evidence tends to make any fact of consequence more or less probable. *State v. Fulminante*, 193 Ariz. 485, 502, ¶ 57, 975 P.2d 75, 92 (1999); *see also* Ariz. R. Evid. 401. "This standard of relevance is not particularly high." *State v. Oliver*, 158 Ariz. 22, 28, 760 P.2d 1071, 1077 (1988). "It is not necessary that such evidence be sufficient to support a finding of an ultimate fact; it is enough if the evidence, if admitted, would render the desired inference more probable." *State v. Paxson*, 203 Ariz. 38, 41-42, ¶ 17, 49 P.3d 310, 313-14 (App. 2002) (citation omitted). The fact that Cravets did not behave like other people who had just found out a family member had been killed has some logical tendency to support the State's theory that his story about having just found his wife dead was not true.

¶10　　　　None of the arguments raised by Cravets for the first time on appeal regarding the detective's testimony provides a basis for relief under fundamental error review. Fundamental error is rare and involves "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607 (citation omitted). Here, the evidence in question consisted of rather brief testimony by the detective contrasting Cravets' demeanor during the interview with that of other people he had encountered under similar circumstances. The detective did not offer any opinion about what the contrast in demeanor meant and closed his testimony on this subject by acknowledging that "everybody reacts differently to different situations" and that Cravets did ask what happened later on during the interview. Under these circumstances, even assuming

that some portion of the detective's testimony regarding Cravets' demeanor was objectionable, Cravets is unable to sustain his burden of showing the existence of fundamental error or that the error caused prejudice.

### C.     Admission of Other-Act Evidence

**¶11**        Cravets contends the trial court erred in admitting other-act evidence in violation of Arizona Rule of Evidence 404(b).  Specifically, Cravets argues that the court should not have admitted evidence of his two prior acts of domestic violence against his wife, one in August 2006 and the other in July 2010, just three weeks prior to her murder.  We review the admission of evidence under Rule 404(b) for abuse of discretion.  *State v. Gulbrandson*, 184 Ariz. 46, 60, 906 P.2d 579, 593 (1995).

**¶12**        Rule 404(b) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such other-act evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ariz. R. Evid 404(b).  When other-act evidence "is offered for a non-propensity purpose, it may be admissible under Rule 404(b), subject to Rule 402's general relevance test, Rule 403's balancing test, and Rule 105's requirement for limiting instructions in appropriate circumstances."  *State v. Ferrero*, 229 Ariz. 239, 242, ¶ 12, 274 P.3d 509, 512 (2012).

**¶13**        The two prior acts of domestic violence were relevant.  There was clear and convincing evidence that Cravets pled guilty in both cases.  Further, there was evidence presented that the victim obtained an order of protection against Cravets before his release from jail following the second incident and Cravets was the last person seen with the victim at their home prior to her murder.  The evidence of the prior incidents was relevant under Rule 404(b) to show motive and intent for the murder.  *Gulbrandson*, 184 Ariz. at 60, 906 P.2d at 593; *see also State v. Wood*, 180 Ariz. 53, 62, 881 P.2d 1158, 1167 (1994) ("Defendant's prior physical abuse of and threats against [victim] were relevant to show his state of mind and thus were properly admitted under Rule 404(b)."); *State v. Jeffers*, 135 Ariz. 404, 418, 661 P.2d 1105, 1119 (1983) ("We have long held that where premeditation [along with malice or motive] is in issue, evidence of earlier quarrels or difficulties between the accused and the victim is admissible.").  Contrary to Cravets' contention, the fact that one of the incidents occurred four years prior to the murder does not make that incident irrelevant.  The age of the incident is simply "a factor to be considered by the jury in determining the weight of the evidence." *Jeffers*, 135 Ariz. at 418, 661 P.2d at 1119; *see also Leonard v.*

*State*, 17 Ariz. 293, 303, 151 P. 947, 951 (1915) (upholding admission of evidence of trouble between the defendant and victim four years before murder).

¶14        Further, applying the Rule 403 balancing test, the trial court could have reasonably concluded that the probative value of the other acts of domestic violence were not substantially outweighed by the danger of unfair prejudice given the two earlier incidents in comparison to the murder. *See State v. Harrison*, 195 Ariz. 28, 33, ¶ 21, 985 P.2d 513, 518 (App. 1998) ("The trial court is in the best position to balance the probative value of challenged evidence against its potential for unfair prejudice. Thus, it has broad discretion in deciding the admissibility."). Finally, the court gave a limiting instruction pursuant to Rule 105 on the proper use of the other-act evidence. Consequently, the evidence was properly admitted under Rule 404(b).

### D.        Admission of Hearsay Evidence

¶15        Cravets argues the trial court erred in allowing hearsay statements by the victim. Hearsay is an out-of-court statement offered in evidence to prove the matter asserted and is generally inadmissible. Ariz. R. Evid. 801(c), 802. Hearsay statements may be admissible, however, if they fall within one of the exceptions enumerated in Arizona Rule of Evidence 803. We review a trial court's admission of evidence under exceptions to the hearsay rule for an abuse of discretion. *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41, 68 P.3d 110, 118 (2003).

¶16        Cravets challenges three statements by the victim. The first is a statement that she wanted a divorce. The trial court correctly ruled that this statement was admissible under the state-of-mind exception to the rule against hearsay. This exception allows the admission of a statement of the declarant's "then existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed[.]" Ariz. R. Evid. 803(3). The statement evidencing the victim's state-of-mind about wanting to divorce Cravets was relevant to prove Cravets' motive. *See Fulminante*, 193 Ariz. at 496, ¶ 34, 975 P.2d at 86; *Wood*, 180 Ariz. at 62-63, 881 P.2d at 1167-68 ("The statements about [the victim's] fear and desire to end the relationship helped explain Defendant's motive."). Accordingly, the court did not err in admitting this statement.

¶17 Second, Cravets challenges the admission of a statement made by the victim as he was being arrested following the second domestic violence incident. The statement was to the effect: "You did this to me. You need to go to jail." But, as Cravets acknowledges, the statement was not presented at trial. Thus, the argument that the trial court erred in admitting this "evidence" is without merit.

¶18 Cravets argues, however, that the hearsay statement was prejudicial because the prosecutor referred to this "evidence" in opening statement and closing arguments. To the extent Cravets seeks to claim error based on the prosecutor's remarks, any review would necessarily be limited to fundamental error because no objection was made to the prosecutor's statements. *State v. Phillips*, 202 Ariz. 427, 437, ¶ 48, 46 P.3d 1048, 1058 (2002). Even assuming the prosecutor erred by improperly referring to facts not in evidence, Cravets is unable to show the requisite prejudice to obtain relief under fundamental error review, given the proper admission of evidence regarding the two previous acts of domestic violence.

¶19 Third, Cravets argues that the trial court erred by allowing the State to introduce testimony that the victim told her son, "If you don't hear from me in a couple of days, call the police" shortly before she left to go to her home on the day she was murdered. There was no error because the statement was not hearsay. Instead, the statement was admissible to explain why the victim's son repeatedly called the victim and subsequently called the police to check on her after he was unable to contact the victim for several days. *See State v. Hernandez*, 170 Ariz. 301, 307, 823 P.2d 1309, 1315 (App. 1991) (holding statements not hearsay when not offered for truth of the matter asserted but rather only to show how "events unfolded").

### E. Denial of Motion to Dismiss

¶20 Cravets argues that the trial court erred by denying his pretrial motion to dismiss. We review a ruling on a pretrial motion to dismiss for abuse of discretion. *State v. Moody*, 208 Ariz. 424, 448, ¶ 75, 94 P.3d 1119, 1143 (2004).

¶21 Cravets' motion to dismiss claimed the State acted in bad faith in destroying or failing to preserve potentially exculpatory evidence. The alleged potentially exculpatory evidence consisted of two vehicles stolen from Cravets' home months after he had been arrested for the murder of his wife. The vehicles had originally been searched by the police as part of

the investigation of the victim's death and left at Cravets' home after the police completed their search.

¶22 Cravets' allegation that the two vehicles might have had exculpatory value after they were found is entirely speculative, and there is simply no indication that any police officer acted in bad faith in failing to preserve the recovered vehicles. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). The trial court did not err in denying the motion to dismiss.

F.      Denial of *Willits* Instruction

¶23 Cravets argues the trial court erred by denying his request for a *Willits* instruction. *See State v. Willits*, 96 Ariz. 184, 187, 293 P.2d 274, 276 (1964). The court denied the request on the grounds that there was no evidence justifying the instruction. We review a court's refusal to give a *Willits* instruction for abuse of discretion. *State v. Speer*, 221 Ariz. 449, 457, ¶ 39, 212 P.3d 787, 795 (2009).

¶24 A *Willits* instruction permits the jury to draw an inference from the government's destruction of material evidence that the lost or destroyed evidence would be unfavorable to the State. *Fulminante*, 193 Ariz. at 503, ¶ 62, 975 P.2d at 93. A defendant is entitled to a *Willits* instruction only upon proof that (1) the State failed to preserve material evidence that was accessible and might have tended to exonerate him, and (2) there was resulting prejudice. *Id*. "To show that evidence had a 'tendency to exonerate,' the defendant must do more than simply speculate about how the evidence might have been helpful." *State v. Glissendorf*, CR–13–0388–PR, 2014 WL 3537765 at *2, ¶ 9 (July 18, 2014). In other words, there must be a real likelihood that the evidence would have had evidentiary value." *Id*. When the evidence does not support the instruction, it should not be given, because it would tend to mislead the jury. *State v. Smith*, 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988).

¶25 Cravets claims he was entitled to the instruction because the State failed to preserve the two vehicles stolen from his home months after the murder, failed to collect cigarette butts and a glass inside the home for testing, and destroyed possible DNA and fingerprint evidence on bullet cartridges located in the master bedroom. According to Cravets, these items might have eliminated him as the perpetrator if they showed the presence of another person in the home.

**¶26**      Loss of evidence justifying a *Willits* instruction ordinarily concerns physical evidence used to commit the alleged crime. *State v. Broughton*, 156 Ariz. 394, 399, 752 P.2d 483, 488 (1988). Nothing in the record indicates that any of the items on which Cravets based his request for a *Willits* instruction had any involvement with the victim's murder or that the items would have some tendency to exonerate him. Further, the assertion that the items might have shown the presence of another person in the home is pure speculation. Cravets is therefore unable to establish prejudice from their unavailability. The trial court properly denied the request for a *Willits* instruction.

## CONCLUSION

**¶27**      For the reasons stated, we affirm Cravets' conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: gsh